2007-NMSC-002

150 P.3d 971

Lynn MONTGOMERY, Dr. Robert
Wessely, and Dr. Catherine Har-
ris, Protestants–Petitioners,

v.

LOMOS ALTOS, INC. and Garden
Path Associates, Applicants–
Respondents,

and

New Mexico State Engineer,
Real Party in Interest.

No. 29,202.

Supreme Court of New Mexico.

Dec. 5, 2006.

22

Humphrey & Odé, P.C., Mary E. Humphrey, Connie Odé, El Prado, NM, for Petitioners.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Susan Bisong, Maria O'Brien, Timothy J. De Young, Hunt & Davis, P.C., Catherine F. Davis, Albuquerque, NM, for Respondents.

D.L. Sanders, Hilary Lamberton, Santa Fe, NM, for Real Party in Interest.

Sheehan, Sheehan & Stelzner, P.A., John W. Utton, Albuquerque, NM, for Amicus Curiae County of Santa Fe.

Peter Thomas White, Santa Fe, NM, for Amici Curiae 1000 Friends of New Mexico, New Mexico Acequia Association, and Amigos Bravos.

Stein & Brockmann, P.A., Jay F. Stein, James C. Brockmann, Santa Fe, NM, for Amici Curiae City of Alamogordo, City of Las Cruces and El Prado Water and Sanitation District.

## OPINION

SERNA, Justice.

{1} Applicants applied for permits from the State Engineer to change the point of diversion and the place and purpose of use of surface water rights in Valencia County (move-from location) to groundwater rights in Sandoval County (move-to location). Both the move-from location and move-to location are within the Rio Grande Underground Water Basin. Applicants, developers, sought the transfer to provide water to the Overlook Subdivision, a 106–lot residential development. Protestants, existing surface water users at the move-to location, objected to the applications based on three statutory grounds: the transfer would (1) impair existing water rights at the move-to location, (2) be contrary to conservation of water within the state, and (3) be detrimental to the public welfare of the state. *See* NMSA 1978, §§ 72–5–23, 72–12–7(A) (1985). A State Engineer hearing examiner determined the Protestants' objections were without merit and approved the applications. Protestants appealed to the district court and, in a de novo proceeding, both Protestants and Applicants filed cross-motions for summary judgment. The district court adopted the hearing examiner's findings, granted Applicants' cross-motion for summary judgment, and denied Protestants' motion. Protestants appealed to the Court of Appeals, which affirmed in a split decision.

{2} Protestants appeal five issues to this Court: (1) Applicants' transfer applications should be considered new groundwater appropriations; (2) surface depletions at the move-to location caused by the applications should be considered per se impairment of existing rights; (3) the State Engineer should have considered all existing rights and not have impermissibly determined the valid-

ity of non-party declarants' water rights; (4) the district court should not have granted Applicants' cross-motion for summary judgment on the issue of impairment because material facts were in dispute; and (5) the Court of Appeals erred in holding that Protestants failed to preserve the issues of water conservation and detriment to the public welfare of the state. Applicants and the State Engineer urge us to affirm the Court of Appeals decision.

{3} We hold that (1) the Court of Appeals correctly determined that the applications were not for new appropriations of groundwater and (2) the surface depletions resulting from the granting of the applications are not per se impairment. However, we agree with Protestants that (3) the State Engineer should have either considered all existing water rights at the move-to location or extinguished those rights; (4) the district court erred by granting Applicants' cross-motion for summary judgment because there was a material fact dispute as to the extent of depletion at the move-to location; and (5) the district court erred in granting Applicants' cross-motion for summary judgment because the motion failed to provide Protestants notice that the issues of water conservation and detriment to the public welfare of the state were subject to summary judgment. This Opinion addresses (3) consideration of existing water rights and (4) the extent of depletion at the move-to location because both apply to the impairment analysis. Therefore, we remand to the district court for a de novo proceeding to determine the measure of existing rights and the extent of depletion at the move-to location, whether this depletion constitutes impairment of existing rights, and whether the applications are contrary to water conservation or detrimental to the public welfare of the state.

# I. FACTUAL BACKGROUND

{4} Applicants Lomos Altos, Inc. and Garden Path Associates sought to provide water to a maximum of 106 residences that compose the Overlook Subdivision in Sandoval County near Placitas, New Mexico. As a result, Applicants filed three permit applications between June 30, 1997, and August 25, 1999, to change the diversion point [1] and the place and purpose of use [2] from surface to groundwater within the Rio Grande Underground Water Basin. The permits sought to transfer a total 15.05 acre feet per year (afy) in surface water rights from locations on the Rio Grande in Valencia County to groundwater pumping rights in Sandoval County, near Placitas.

{5} Applicants published a notice of the applications pursuant to NMSA 1978, Section 72–5–4 (1941, prior to 2001 amendment). *See also* NMSA 1978, § 72–12–3(D) (1985, prior to 2001 amendment) (containing the publication requirement for groundwater transfers). Sections 72–5–23 and 72–12–7(A) govern surface water and groundwater transfers, respectively, and allow water rights to be transferred from one location to another, without losing priority,[3] if such transfer (1) can be made without detriment or impairment to existing water rights, (2) is not contrary to conservation of water within the state, and (3) is not detrimental to the public welfare of the state. The transfer must satisfy all three requirements before the State Engineer can approve it. *See* §§ 72–5–23, 72–12–7(A).

{6} Protestants Robert Wessely, Elizabeth Gardner, Lynn Montgomery, and Catherine Harris hold water rights at the move-to location. Protestants' water rights are taken from sources including Rosa de Castillo Spring,[4] San Francisco Springs, Harris

---

1. A diversion point is the place where the appropriator installs a device for removing water from the ground, such as wells, pumps, and canals. Charles T. DuMars & Michele Minnis, *New Mexico Water Law: Determining Public Welfare Values in Water Rights Allocation*, 31 Ariz. L.Rev. 817, 821 (1989).

2. A water right is defined not only by its priority date, but also by how the water is used, e.g.,

agricultural, municipal, or industrial use. DuMars & Minnis, *supra* note 1, at 820.

3. New Mexico water law is based on prior appropriation, i.e., "[p]riority in time shall give the better right." NMSA 1978, § 72–1–2 (1907).

4. The Rosa de Castillo Spring was also identified as Rose de Castille Spring, Rosa de Castilla Spring, and Rosa de Costillo Spring in various reports and motions filed below.

Spring, Tunnel Spring, and Placitas Springs.[5] Protestants claimed that if Applicants' transfer applications were approved, then Protestants' respective water rights would be impaired by the resulting depletion at the water sources. Protestants also objected to the applications on the other two statutory grounds.

{7} The State Engineer hearing examiner held a hearing to discuss the three applications and to determine if they satisfied the three statutory requirements. The hearing examiner determined that the transfer applications met all three statutory criteria but focused his report and recommendation on whether the applications would impair existing rights at the move-to location. The impairment analysis concentrated on the proposed applications' effects on Rosa de Castillo Spring, San Francisco Springs, Harris Spring, Tunnel Spring, and Placitas Springs, the springs' estimated annual yields, and all existing water right declarations at each spring.

{8} At the hearing, Applicants, Protestants, and the State Engineer submitted simulations of the proposed applications' effects on existing wells and springs at the move-to location. Applicants' expert predicted drawdowns of less than 0.17 feet in neighboring wells of other ownership after 40 years of pumping and that the 15.05 afy retirement of surface water rights at the move-from location would offset[6] the proposed groundwater pumping impacts on the Rio Grande.[7] In other words, the applications would only slightly deplete the level in existing wells and springs and have no effect on the Rio Grande as whole. Protestants' expert's model, in contrast, showed more significant effects on the springs. The State Engineer Water Rights Division's (WRD) model yielded results similar to Applicants' model. The hearing examiner determined Protestants' model was less reliable than both Applicants' and WRD's models. The hearing examiner then listed the State Engineer's estimated annual yields of the springs at the move-to location. Rosa de Castillo Spring's annual yield is estimated at 161 afy, the San Francisco Springs annually yield approximately 129.6 afy, and Harris Spring yields an estimated 0.8 afy annually.

{9} Finally, the hearing examiner reviewed existing water right declarations[8] at each of the springs at the move-to location. The hearing examiner observed that the depletion effects on Tunnel Springs and Placitas Springs would be de minimis and that there were no water rights associated with Harris Spring. Therefore, for purposes of this appeal, we look at all the water right declarations for Rosa de Castillo Spring and San Francisco Springs.

{10} Rosa de Castillo Spring is the source of three water right declarations: Protestant Montgomery's Declaration 03890 claims a right to irrigate 8 acres of land; Declaration

5. Wessely and Gardner own a surface water right used on 5.5 acres of land taken from the San Francisco Springs. Harris owns an underground water right taken from a well approximately 32 feet deep and 4 feet square that is on her property. Montgomery owns a water right to irrigate 8 acres of land taken from the Rosa de Castillo Spring.

6. Offset and retirement are interrelated concepts. The Middle Rio Grande Administrative Area Guidelines require groundwater applicants to obtain valid surface water rights in an amount sufficient to offset the application's effect on the Rio Grande's surface flows. *Office of the N.M. State Eng'r, Middle Rio Grande Administrative Area Guidelines for Review of Water Right Applications* 2, 5 (2000), http://www.ose.state.nm.us/doing–business/mrgbasin/crit9–13.pdf. These surface water rights are then retired, i.e., no longer used toward surface water uses. *See City of Albuquerque v. Reynolds*, 71 N.M. 428, 440, 379 P.2d 73, 81 (1962) ("[The requirement] that surface rights be retired to the extent necessary to protect prior stream appropriators as a condition of the granting of an application to appropriate from the basin, is within the lawful power and authority of the state engineer.").

7. Different units of measurement are used in this opinion. Generally, the proposed pumping impacts were measured in afy, and water rights were measured by their use on individual acres of land.

8. Any water right holder may make and file a declaration of beneficial use with the State Engineer. NMSA 1978, §§ 72–12–5 (1931) (groundwater right), 72–1–3 (1961) (surface water right vested pre–1907). These declarations are prima facie evidence of their contents, including the claimed water right. Sections 72–12–5, 72–1–3.

01644 [9] describes an irrigation right used on a total of 83.92 acres of land; and Declaration 03420 [10] claims a water right applied to 17 acres of land. A WRD resource master's memorandum relied on aerial photographs from 1935, 1954, 1962, 1967, and 1975 to conclude that most of these irrigation rights had been discontinued. The hearing examiner's report and recommendation listed only Declaration 03890's claim for irrigation of 8 acres, and concluded that the Rosa de Castillo Spring's yield of 161 afy far exceeded the amount required by the declaration and that no existing water rights would be impaired by the transfer applications' pumping impacts.

{11} San Francisco Springs is the source of two water right declarations: Protestants Wessely and Gardner's Declaration 04358, which claims water put to beneficial use on 5.5 acres of land; and Declaration 02276,[11] which claims a water right to beneficially use water on a minimum of 29 acres. While the total amount of water from San Francisco Springs to be put to beneficial use was on at least 34.5 acres, the hearing examiner relied on four aerial photographs taken between 1935 and 1971 to conclude that only 15 acres of land were irrigated and that Applicants' proposed use would not impair the existing irrigation rights used on 15 acres from San Francisco Springs. In sum, the hearing examiner found no impairment of existing rights at either Rosa de Castillo Spring or San Francisco Springs because the annual estimated yields are sufficient to satisfy all existing water rights at each spring, even after the transfer applications are granted and the attendant depletion occurs.

{12} The State Engineer adopted the hearing examiner's recommendations in an August 28, 2001, Order. Protestants appealed the State Engineer's decision pursuant to NMSA 1978, Section 72-7-1(A) (1971), and

raised issues including the same three statutory questions addressed by the hearing examiner. The district court reviews these appeals de novo. Section 72-7-1(E). Protestants named Applicants and the State Engineer as Defendants. Protestants moved for summary judgment on impairment of existing water rights based on the novel contention that in the fully-appropriated Rio Grande stream system, any new surface depletion is per se impairment. Protestants based their motion on undisputed facts. Applicants filed a cross-motion for summary judgment, which fully incorporated Protestants' statement of facts, but included five additional facts alleging that depletions caused by the proposed wells would be de minimis. Applicants also averred in a footnote that Protestants did not challenge the State Engineer's determination that the transfers were not contrary to the state's water conservation or that they would not be detrimental to the state's public welfare, but the motion did not include a statement of reasons why the transfer applications met these two statutory criteria. Protestants' response contested Applicants' claim that the depletions would be de minimis because the depletion amount was in dispute. However, Protestants failed to respond to Applicants' footnote that claimed Protestants did not challenge the State Engineer's conclusions that the transfer applications were not contrary to the state's water conservation or the public welfare. After conducting a hearing on these motions, the district court denied Protestants' summary judgment motion, granted Applicants' summary judgment cross-motion, and approved the transfer applications in accordance with the State Engineer's order dated August 28, 2001.

{13} Protestants appealed the district court's decision to the Court of Appeals. The Court of Appeals affirmed the district

---

**9.** Declaration 01644 is under the name Rumaldo T. Montoya. Montoya did not object to the transfer applications or participate in these proceedings. A WRD impairment analysis memorandum states Declaration 01644 contained three items, including a right to irrigate 3.5 acres and an irrigation right used on 80.42 acres.

**10.** Declaration 03420 was filed under the name of several individuals who did not protest Appli-

cants' transfer applications or participate in these proceedings.

**11.** Declaration 02276 is under the name of Richard Illing. Illing did not object to the transfer applications or participate in these proceedings, but the hearing examiner considered this declaration in the examiner's impairment analysis.

court's reasoning and result. *See Montgomery v. State Engineer,* 2005–NMCA–071, 137 N.M. 659, 114 P.3d 339. Protestants filed a petition for writ of certiorari with this Court, and we granted the petition on June 2, 2005.

## II. THE STATUTORY AND ADMINISTRATIVE FRAMEWORK FOR WATER RIGHT TRANSFERS IN THE MIDDLE RIO GRANDE ADMINISTRATIVE AREA

{14} We begin by reviewing the law surrounding surface water and groundwater transfers, *City of Albuquerque,* 71 N.M. at 437, 379 P.2d at 79, and the *Office of the New Mexico State Engineer, Middle Rio Grande Administrative Area Guidelines for Review of Water Right Applications* (2000), http://www.ose.state.nm.us/doing–business/mrgbasin/crit9–13.pdf [hereinafter *MRGAA Guidelines* ]. Surface water and groundwater transfers are governed by Sections 72–5–23 and 72–12–7(A), respectively. These sections allow water right transfers from land in one area to another, without losing priority of the right when established, if such transfers (1) can be made without detriment or impairment to existing water rights, (2) are not contrary to conservation of water within the state, and (3) are not detrimental to the public welfare of the state. Sections 72–5–23, 72–12–7(A). The State Engineer has authority to approve an application for a water right transfer only when all three criteria are met. Sections 72–5–23, 72–12–7(A). Since there is a hydrologic connection between the Rio Grande and the underlying aquifer, described in *City of Albuquerque,* 71 N.M. at 437, 379 P.2d at 79, this Court recognized the State Engineer's authority to read surface and groundwater statutes in harmony when requiring an offset of a surface water right before allowing a new groundwater appropriation in the Rio Grande Underground Water Basin. *City of Albuquerque* specifically acknowledged that the State Engineer has the power to develop regulations and impose conditions on groundwater applications, such as the surface water right retirements, in order to prevent impairment of existing rights. *Id.* at 439, 379 P.2d at 80–81.

{15} Both the move-from location and the move-to location are located within the Middle Rio Grande Administrative Area (MRGAA). The State Engineer has developed the *MRGAA Guidelines* to review water right applications, ensure compliance with the Rio Grande Compact,[12] and prevent impairment of existing rights. *Id.* at 1. The *MRGAA Guidelines* recognize that the Rio Grande's surface waters are fully appropriated, *id.,* that new surface water appropriations are not allowed, *id.,* and that transfers of existing valid water rights are necessary before any surface water can be made available for new appropriations, *id.* at 2. The waters within the Rio Grande Underground Water Basin are considered to be hydrologically connected to the Rio Grande surface flows, so that any groundwater diversions in the system will eventually deplete the surface flows within the system in an equal amount. *Id.* at 1. Because of the hydrologic connection within the MRGAA, the guidelines require that groundwater applicants obtain and retire valid water rights within the MRGAA to offset the groundwater pumping effects. *Id.* at 2. The State Engineer's reply brief states that as a result of applicable case law, the *MRGAA Guidelines,* and Section 7–5–23, Applicants' transfer application must not result in net depletions to the Rio Grande's surface water and must not impair existing water rights. Impairment of existing rights is evaluated in terms of the Rio Grande and the move-to location.

## III. STANDARD OF REVIEW

{16} An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo. *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where

---

**12.** New Mexico, Colorado, and Texas entered into the Rio Grande Compact, NMSA 1978, §§ 72–15–23 to –25 (1939, as amended through 1945), to ensure equitable apportionment of the Rio Grande's waters and prevent future controversies among the states and their citizens regarding these waters. Under the Compact, New Mexico is obligated to deliver a certain amount of water to the Elephant Butte Dam for use by Texas. *See Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.,* 115 N.M. 229, 235, 849 P.2d 372, 378 (Ct.App.1993).

there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment. *Martinez v. Metzgar*, 97 N.M. 173, 174, 637 P.2d 1228, 1229 (1981). "All reasonable inferences are construed in favor of the non-moving party." *Portales Nat'l Bank v. Ribble*, 2003–NMCA–093, ¶ 3, 134 N.M. 238, 75 P.3d 838; *see also Gormley v. Coca–Cola Enters.*, 2005–NMSC–003, ¶ 8, 137 N.M. 192, 109 P.3d 280.

## IV. APPLICANTS SOUGHT TO TRANSFER EXISTING SURFACE WATER RIGHTS, NOT TO MAKE NEW GROUNDWATER APPROPRIATIONS

{17} Applicants contend that this case is simply the transfer of 15 afy of surface water rights to groundwater rights and is governed by Sections 72–5–23 and 72–12–7. Protestants argue that the applications are for new groundwater uses and, therefore, are new groundwater appropriations.

■ {18} Protestants, Applicants, and the State Engineer agree that the *MRGAA Guidelines* apply in this case. The *MRGAA Guidelines* state that the Rio Grande's surface waters have been considered fully appropriated since the Rio Grande Compact was signed. *Id.* at 1. The *MRGAA Guidelines* embody the WRD's current practices, including how the State Engineer evaluates pending and future applications for groundwater permits. *Id.* "A permit to divert ground water shall be conditioned to limit the actual groundwater diversion to the valid consumptive use surface water rights held and designated for offset purposes...." *Id.* at 4. The *MRGAA Guidelines* also explain that "the public welfare is best served by limiting actual groundwater diversions ... to the amount of valid surface water rights *transferred* or otherwise held by the permittee." *Id.* at 3 (emphasis added). Therefore, the State Engineer treats new groundwater appropriations as surface water right transfers which change the surface water right's purpose of use and diversion point.

{19} Protestants depend on *City of Albuquerque*, 71 N.M. at 439, 379 P.2d at 80 (analyzing the State Engineer's authority to promulgate rules requiring surface water right retirements "as a condition to new appropriations of underground water from the Rio Grande"), and the *MRGAA Guidelines* at 1 ("These guidelines embody the [WRD's] current practice for evaluating pending and *future* applications for permits for groundwater use in the MRGAA ...." (emphasis added)), for the proposition that Applicants' water rights transfer applications are for new appropriations of water in the Rio Grande Underground Basin. Regardless of how Protestants wish to characterize Applicants' applications, the *MRGAA Guidelines* clearly state the applicable State Engineer's procedure: the applicant must obtain, designate, and retire a valid surface water right to offset the new groundwater diversion, *id.* at 5, and there should be no impairment to existing water right holders, *id.* at 6. The application must also meet the other two Section 72–5–23 requirements. *MRGAA Guidelines* at 6, 8.

{20} Protestants agree that the retirement of surface water rights at the move-from location will offset the groundwater pumping depletion impacts to the Rio Grande stream system as a whole, but argue that the surface right offset must come from the move-to location rather than anywhere in the MRGAA. Nothing in the *MRGAA Guidelines* or Sections 72–12–7 and 72–5–23 require offset to come from the move-to location. In this case, it is uncontested that both the move-from and move-to locations are hydrologically connected within the MRGAA. As long as the net depletion from the groundwater pumping is offset by retirement of surface rights for the system as a whole, there is no *new* appropriation of basin water. As a result, the State Engineer, district court, and Court of Appeals were correct in finding that the applications are requests for transfers to change the diversion point and place and purpose of use from surface to groundwater and are not new appropriations.

## V. DEPLETIONS AT THE MOVE–TO LOCATION DO NOT CONSTITUTE PER SE IMPAIRMENT OF EXISTING WATER RIGHTS

{21} It is uncontested that the Rio Grande's surface waters are fully appropriat-

ed. From this fact, Protestants urge this Court to find that, since it is uncontested that some depletion of surface waters will occur as a result of the Applicants' transfer applications, per se impairment of Protestants' surface water rights will occur. In other words, *any* depletion at the move-to location should be considered impairment. Applicants correctly state, however, that this Court has refused to make any bright-line rule regarding what constitutes impairment. "[T]he question of impairment of existing rights is one which must generally be decided upon the facts in each case, and ... a definition of 'impairment of existing rights' is not only difficult, but an 'attempt to define the same would lead to severe complications.'" *Mathers v. Texaco, Inc.,* 77 N.M. 239, 245, 421 P.2d 771, 776 (1966).

{22} In *Mathers,* the protestants complained that granting a groundwater appropriation application in the Lea County Underground Water Basin would result in impairment of their existing water rights because the new appropriation would lower the water tables in the protestants' wells and increase their pumping costs. *Id.* at 242–43, 421 P.2d at 774. While we recognized that the Lea County Underground Water Basin is a non-rechargeable basin, *id.* at 242, 421 P.2d at 774, this Court refused to find impairment as a matter of law where a lower water level would result in increased pumping costs for the protestants, *id.* at 246, 421 P.2d at 776. We held the protestants' impairment theory would make any groundwater appropriation approval subsequent to the initial permit unlawful. *Id.* at 244–45, 421 P.2d at 775; *see also Application of Brown,* 65 N.M. 74, 78–79, 332 P.2d 475, 478 (1958) (upholding a non-impairment finding although there would be a decline in the protestant's water table); *Stokes v. Morgan,* 101 N.M. 195, 202, 680 P.2d 335, 342 (1984) ("New withdrawals which cause a minimal acceleration in the rate of saltwater intrusion or a minimal increase in salinity do not constitute impairment as a matter of law.... The determination of whether there is impairment must be made on a case-by-case basis."). This Court has found impairment in other circumstances.

*See City of Albuquerque,* 71 N.M. at 434–35, 379 P.2d at 77–78 (finding that if the city acquired and retired surface water rights to offset proposed groundwater appropriations there would be no impairment of existing surface rights). Likewise, we are not announcing that de minimis depletions can never result in impairment. In *Heine v. Reynolds,* 69 N.M. 398, 401–02, 367 P.2d 708, 710–11 (1962), we upheld the State Engineer's impairment determination when the facts showed granting an application would result in an increase, albeit small, in salt content in an underground basin. To the contrary, these findings were based on the individual facts of the cases and did not announce a bright-line impairment rule. *Id.* at 402, 367 P.2d at 711 ("We are of the view that the question of impairment of existing rights is a matter which must generally depend upon each application, and to attempt to define the same would lead to severe complications.").

█ {23} Protestants' claim in this case is very similar to the *Mathers* protestants' argument: impairment exists as a matter of law if there is any resulting surface depletion at the move-to location. Protestants attempt to distinguish this case by noting that the State Engineer does not allow new Rio Grande surface water appropriations. While this is true, we have already found that Applicants seek to transfer surface water rights to groundwater rights. The State Engineer permits such surface water right to groundwater right transfers in the Middle Rio Grande Basin according to the *MRGAA Guidelines.* Protestants' attempt to distinguish this case is, therefore, unpersuasive.

{24} We reaffirm our holdings in *Mathers* and *Stokes* that the individual facts of each case may require different resolutions of impairment questions. This Court defers to the facts relating to impairment which will be presented to the trial court and refuses to adopt Protestants' argument that surface depletions in the fully-appropriated Rio Grande result in per se impairment. Therefore, we affirm the district court and Court of Appeals. *See Montgomery,* 2005–NMCA–071, ¶ 33, 137 N.M. 659, 114 P.3d 339.

{25} Protestants' motion for summary judgment relied exclusively on the argument that any depletion in a fully-appropriated water system is per se impairment. Having found no merit in that argument, we affirm the Court of Appeals' conclusion that the district court did not err in denying Protestants' motion for summary judgment. *Id.* ¶ 41.

## VI. THE DISTRICT COURT IMPROPERLY GRANTED APPLICANTS' SUMMARY JUDGMENT CROSS-MOTION ON THE ISSUE OF IMPAIRMENT BECAUSE THERE ARE MATERIAL FACTS IN DISPUTE

{26} Protestants argue that Applicants' cross-motion for summary judgment was premised on the fact that the depletions at the move-to location were de minimis and that the existing water rights associated with Rosa de Castillo Spring and San Francisco Springs would be much less than the estimated yields at both sites, i.e., there was enough water to satisfy all existing water rights and any attendant depletion resulting from the transfer applications. Applicants counter that the State Engineer could validly find that no impairment would occur because the effect on certain springs would be de minimis. Applicants explain that this is not a new legal impairment standard, only a proper basis upon which to make an impairment determination because the impact on the existing water rights was immeasurable. In the Rosa de Castillo Spring and San Francisco Springs where the predicted depletion effect was measurable, Applicants claim the effect on existing water rights was still minimal and, therefore, the State Engineer's non-impairment determination was valid.

{27} In granting the transfer applications, the hearing examiner described the depletion impacts on Tunnel Spring and Placitas Springs as de minimis but made no similar finding as to the other springs. Instead, the hearing examiner found that the estimated annual yield of Rosa de Castillo Spring and San Francisco Springs would satisfy the current water uses at these springs, even after the transfer applications' attendant depletion

would occur. Before the district court, Applicants relied on five facts for their cross-motion for summary judgment, which can be summed up in three statements: (1) the depletions to surrounding springs would be de minimis; (2) most of the water declarations filed at the move-to location springs had been discontinued and, therefore, overstated current irrigation water uses; and (3) the estimated annual yields of the Rosa de Castillo Spring and the San Francisco Springs were greater than the water rights associated with each spring. Protestants, the non-moving party, specifically contested these points in their response, arguing that the expected depletions at Rosa de Castillo Spring and San Francisco Springs were measurable and in dispute. Protestants also contested whether the water declarations filed at the move-to location had actually been discontinued. The district court's order denying Protestant's summary judgment motion and granting Applicants' cross-motion for summary judgment incorporated the hearing examiner's findings but did not include an independent de minimis finding.

## A. The State Engineer Must Consider All Declared Water Rights at the Move-To Area in the Impairment Analysis or Extinguish Non-Party Declarants' Water Rights

■ {28} The State Engineer has a statutory obligation to determine if existing water rights will be impaired when a transfer application is filed. *See* §§ 72–5–23, 72–12–7. In considering the issue of existing water rights at the Rosa de Castillo Spring, the State Engineer hearing examiner only included Protestant Montgomery's Declaration 03890, which claims a water right for irrigation of 8 acres. The hearing examiner did not mention Declaration 01644 or Declaration 03420, which claim rights to irrigate a total of 100.92 acres. A WRD water resource master utilized five aerial photographs taken between 1935 and 1975 to determine that most irrigation rights from Rosa de Castillo Spring were discontinued. For the San Francisco Springs, the hearing examiner listed Protestants Wessely and Gardner's Declaration 04358 and Declaration 02276, which claim water rights for irrigation on a total of at

least 34.5 acres. The hearing examiner relied on aerial photographs taken between 1935 and 1971 to conclude that at the time of the hearing, irrigation water uses were limited to approximately 15 acres of land from San Francisco Springs. These conclusions led to the hearing examiner's finding that the estimated yields of the springs far exceeded the current water usage and the proposed pumping impacts at each spring. We hold that under the facts of this case, the hearing examiner had no authority to ignore the above-mentioned water rights declarations at these springs.

{29} We agree with Applicants and the State Engineer that beneficial use is the measure, basis, and limit of a water right, N.M. Const. art. XVI, § 3; Section 72–1–2; and that these pre–1907 declarations are only prima facie evidence of the claimed water right, Section 72–1–3. The Court of Appeals has recognized the State Engineer's authority to rebut presumptions created by pre–1907 declarations. *See State ex rel. Martinez v. Lewis,* 118 N.M. 446, 449, 882 P.2d 37, 40 (Ct.App.1994) ("A 'prima facie' showing merely establishes the fact if not rebutted."); *see also Eldorado Utils., Inc. v. State ex rel. D'Antonio,* 2005–NMCA–041, ¶ 20, 137 N.M. 268, 110 P.3d 76 (upholding the State Engineer's refusal to accept amended declarations when the State Engineer's records contained information rebutting the declarations' claims), *cert. denied,* 2005–NMCERT–004, 137 N.M. 454, 112 P.3d 1111. In this case the State Engineer argues it is rebutting the contents of the non-party water right declarations but avers that this is not an attempt to adjudicate declared or undeclared rights. This Court disagrees because the State Engineer's failure to formally extinguish these rights leaves open the possibility that the non-party declarants may attempt to use these rights in the future. The hearing examiner saw evidence of use after several years of nonuse in this case. The WRD water resource master acknowledged that a 1975 aerial photograph of Rosa de Castillo Spring showed irrigation on 3 acres of land after a 1967 aerial photograph showed no irrigation for over 17 years. By not formally extinguishing these non-party declarants' water rights, the State Engineer

risks overappropriation of surface water at the move-to location.

{30} *Eldorado Utilities* and *Lewis* state that the State Engineer has the authority to rebut the contents of pre–1907 declarations. Those cases are distinguishable. In both *Eldorado Utilities* and *Lewis,* the declarants wishing to enforce the contents of the declarations were parties to the proceeding and, therefore, in a position to respond to the State Engineer's rebuttal evidence. *Eldorado Utils.,* 2005–NMCA–041, ¶ 2, 137 N.M. 268, 110 P.3d 76; *Lewis,* 118 N.M. at 449, 882 P.2d at 40. In this case, the individuals who filed Declaration 01644, Declaration 03420, and Declaration 02276 are not parties to the proceeding. Consequently, these cases do not support the State Engineer's action in this case.

{31} For the impairment analysis, the State Engineer must either include the total amount of water rights contained in these non-party declarations or formally extinguish them. The State Engineer can extinguish these rights through various means, including a forfeiture proceeding or an abandonment action. NMSA 1978, Section 72–5–28(A) (1998, prior to 2002 amendment), states the applicable forfeiture procedure. *See also* NMSA 1978, § 72–12–8 (1998, prior to 2002 amendment) (applicable to groundwater rights). After four years of nonuse, the State Engineer provides a party with notice of impending water right forfeiture. Section 72–5–28(A). If nonuse persists for another year, the vested water right reverts to the public. *Id.* Our water law statutes recognize that a surface water right will not be forfeited when the reason for nonuse is beyond the water right owner's control. *Id.; see also Chavez v. Gutierrez,* 54 N.M. 76, 82, 213 P.2d 597, 600–01 (1950).

{32} This Court recognized common law abandonment and distinguished it from forfeiture in *State ex rel. Reynolds v. South Springs Co.,* 80 N.M. 144, 146–47, 452 P.2d 478, 480–81 (1969). Unlike forfeiture, abandonment requires an intent to abandon. *Id.* A presumption of an intent to abandon is created by " 'evidence of the failure of the party charged to use the right, or the water,

or to keep the works necessary for the utilization of the water in repair' " for an unreasonable period. *Id.* at 146, 452 P.2d at 480 (quoting 2 Clesson S. Kinney, *A Treatise on the Law of Irrigation and Water Rights,* § 1116, at 2012 (2d ed.1912)). Abandonment is also distinct from forfeiture because abandonment does not require a one-year waiting period after the State Engineer provides the nonuser notice. *See* Section 72–5–28(A). Either of these proceedings should assure that all existing water rights at the move-to location will be considered in the impairment analysis. We conclude that summary judgment on the issue of impairment was inappropriate because the State Engineer failed to consider the aggregate water rights of non-party declarants or, in the alternative, to formally extinguish these water rights.

## B. The Magnitude of the Depletions is also a Material Fact in Dispute for Purposes of the Impairment Analysis

{33} Protestants also disputed the fact that the effects on some of the springs would be de minimis. In an exhibit attached to their response, Protestants projected a depletion of 3.572 afy on the Harris Spring, 3.352 afy on the Rosa de Castillo Spring, and 1.508 afy on the San Francisco Springs after 40 years. These numbers were significantly higher than the WRD's projected depletions of 0.152 afy on the Harris Spring, 0.299 afy on the Rosa de Castillo Spring, and 0.199 afy on the San Francisco Springs. Because Protestants disputed the irrigation uses at the Rosa de Castillo Spring and San Francisco Springs, as well as the transfer applications' depletion impacts at these springs, the hearing examiner's impairment determination, relied upon by the district court, could be flawed.

{34} Applicants did not meet their burden to show that they were entitled to judgment as a matter of law. As a result, this issue is remanded to the district court to properly determine the extent of existing water rights, the magnitude of the applications' depletions, and whether existing water rights will be impaired at each of the move-to location springs.

## VII. APPLICANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUES OF CONSERVATION OF WATER AND PUBLIC WELFARE OF THE STATE

{35} Protestants aver that they preserved the issues of water conservation and public welfare for the state, contrary to the Court of Appeals holding. *See Montgomery,* 2005–NMCA–071, ¶¶ 39–40, 137 N.M. 659, 114 P.3d 339. Protestants argue that they had no notice that Applicants sought summary judgment on these issues in Applicants' cross-motion for summary judgment. Without such notice, Protestants claim that they were not given an opportunity to preserve these issues at this level. Applicants counter that their cross-motion asserted that the State Engineer had properly analyzed and considered all three statutory criteria: impairment, water conservation, and public welfare. They contend that Protestants failed to address these last two issues in their response to the cross-motion for summary judgment or at the June 24, 2003, motions hearing, thereby waiving appellate review.

■ {36} Rule 1–056 NMRA states New Mexico's summary judgment procedure: "The moving party shall submit to the court a written memorandum containing a short, concise statement of the reasons in support of the motion with a list of authorities relied upon." The opposing party then has fifteen days to file a response. *Id.* The notice requirement and opportunity to respond "are designed to protect the rights of the party opposing the motion. When the opposing party has reasonable notice of the issues underlying a summary judgment, together with the opportunity to be heard, and makes no specific allegation of prejudice at that time, summary judgment is an appropriate procedure." *Aldridge v. Mims,* 118 N.M. 661, 664, 884 P.2d 817, 820 (Ct.App.1994). Where the facts are insufficiently developed to make a legal determination, however, summary judgment is not appropriate. *Brown v. Taylor,* 120 N.M. 302, 307, 901 P.2d 720, 725 (1995).

■ {37} In this case, Protestants' motion for summary judgment specifically stated it only sought summary judgment on the issue

**32**

of impairment. Applicants' response and cross-motion for summary judgment included facts and legal authority relating only to the issue of impairment. The cross-motion concluded, "[t]he approved applications will not cause impairment as a matter of law. The State Engineer properly assessed the application's impacts of the applications [sic] on existing rights as required by New Mexico law." Applicants' cross-motion referenced the other two statutory criteria in two sentences, including a footnote that stated, "[Protestants] do not challenge the State Engineer's determination that the applications are not detrimental to the public welfare or contrary to the conservation of water." Applicants' cross-motion failed to include any facts or explain how they were entitled to summary judgment on the issues of public welfare and conservation of water.

{38} We hold that Applicants did not provide Protestants with sufficient notice that the issues of public welfare or conservation of water were at issue in the summary judgment cross-motion and remand to the district court to determine whether the applications meet these two statutory requirements.

## VIII. CONCLUSION

{39} We hold that Applicants' applications were properly considered transfers to change point of diversion and place and purpose of use from surface to groundwater, not new groundwater appropriations. We also hold that the State Engineer properly found that in a fully-appropriated stream system, new depletions should not automatically constitute impairment as a matter of law. However, the district court erred in granting Applicants' cross-motion for summary judgment because material facts are still in dispute. Therefore, we remand to the district court for a de novo proceeding to consider all existing water rights at the move-to location, or extinguish those rights, the extent of depletion at the move-to location, and determine whether this depletion constitutes impairment of existing rights. The district court must also determine whether the applications are contrary to water conservation or detrimental to the public welfare of the state.

{40} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.