This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**SANDRA ORTIZ,**

Appellant/Cross-Appellee,

v.

**No. 31,645 Consolidated with 31,709**

**DAVID JOHNSON and PATRICIA JOHNSON, individually and as husband and wife,**

Appellees/Cross-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Law Office of Roger Moore
Roger Moore
Albuquerque, NM

for Appellant

Puccini & Meagle, P.A.
Patricia Bradley
Albuquerque, NM

for Appellees

**HANISEE, Judge.**

{1}     Plaintiff was bitten by a pit bull while walking her dog on a sidewalk in front of an Albuquerque home. Plaintiff subsequently brought suit against Jonathan Hatch, the tenant who housed the dog at the home, and David and Patricia Johnson (collectively, the Johnsons), the owners of the property who leased the home to Hatch. The district court granted summary judgment in favor of the Johnsons, finding that Plaintiff failed to articulate a theory under which the Johnsons had breached a duty to Plaintiff. The district court further found that Plaintiff failed to provide any evidence that the Johnsons knew or should have known that there was a dog with vicious propensities on the property. Plaintiff appeals on grounds that the district court erred in finding that the Johnsons did not owe a duty to Plaintiff either as property owners or under a Bernalillo County ordinance, and by concluding that there were no issues of material fact. We affirm the district court.

**I.     BACKGROUND**

{2}     On August 26, 2010, Plaintiff walked her leashed dog past a residential property in Albuquerque that was leased and occupied by Hatch and owned by the Johnsons. A pit bull that was boarded at the residence attacked Plaintiff and her dog, injuring

Plaintiff's leg. In November 2010 Plaintiff brought suit against the Johnsons for her injuries, alleging negligence, carelessness, negligence per se, recklessness, and negligent infliction of emotional distress. The Johnsons counterclaimed against Plaintiff for malicious abuse of process.

{3}     In August 2011 the Johnsons brought a motion for summary judgment, relying on *Gabaldon v. Erisa Mortgage Co.*, 1999-NMSC-039, ¶¶ 29-39, 128 N.M. 84, 990 P.2d 197, for the proposition that, as landlords, they were not liable for tort claims that take place on or about a leased premises not in their possession or under their control. Plaintiff responded by distinguishing *Gabaldon* as controlling authority only for commercial leases and not for residential leases. Plaintiff also argued that the Johnsons maintained control and possession over the property because of specific terms in the lease. The lease terms on which Plaintiff relied were:

> 7.     Tenant . . . agrees not to conduct any type of business in the residence, nor store or use any dangerous or hazardous materials. Tenant agrees that the residence is to be used only as a single family residence, with a maximum of [six] tenants. Tenant also agrees to comply with all rules, laws, and ordinances affecting the residence, including all applicable provisions of the Laws of the State of New Mexico. Tenant agrees that no pets or other animals are allowed in the residence without the written permission of the Landlord.
>
> . . . .
>
> 10.    The Tenant agrees not to sub-let the residence or assign this Lease without the Landlord's written consent. Tenant agrees to allow the Landlord reasonable access to the residence for inspection and repair.

3

Landlord agrees to enter the residence only after notifying the Tenant in advance, except in an emergency.

{4} In September 2011 the district court granted summary judgment in favor of the Johnsons and dismissed Plaintiff's suit against them with prejudice. In its decision letter, the district court concluded that Plaintiff failed to articulate "any specific theory of negligence against the Johnsons beyond their ownership of the property where the dog lived and their ability, under the lease terms, to control and inspect the property[,]" both of which it deemed insufficient to create a duty toward Plaintiff. The court also stated that Plaintiff did not provide "any evidence that the Johnsons knew or should have known that there was a dog with vicious propensities boarded on their property." Plaintiff now appeals.

## II. DISCUSSION

{5} We review the district court's grant of summary judgment de novo. *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 ("An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo."). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970

P.2d 582. "All reasonable inferences are construed in favor of the non-moving party." *Montgomery*, 2007-NMSC-002, ¶ 16 (internal quotation marks and citation omitted).

**A.    The Johnsons Did Not Owe a Duty to Plaintiff Because They Lacked Possession of and Control Over the Premises**

{6}    At issue is whether the Johnsons, as landlords, owed a duty to Plaintiff. Our Supreme Court in *Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 14, 148 N.M. 646, 241 P.3d 1086, defined the nature of a general duty inquiry in New Mexico when it held that:

> The question of the existence and scope of a defendant's duty of care . . . depends on the nature of the . . . activity in question, the parties' general relationship to the activity, and public policy considerations. . . . [It] is a question [primarily] of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law.

(Internal quotation marks and citations omitted.) With respect to general, non-possessory landlord liability, "[t]he common law rule regarding liability for injuries to third persons places responsibility on the tenant in possession and excuses the landlord." *Lommori v. Milner Hotels, Inc.*, 1957-NMSC-089, ¶ 11, 63 N.M. 342, 319 P.2d 949. This rule of non-liability generally applies unless one of the following exceptions have been met:

> (1) when the landlord knows of a hidden defect and does not communicate that knowledge to the tenant; (2) when the landlord binds himself by a covenant to repair; (3) when the landlord reserves control of part of the premises as passageways, stairs, etc.; (4) when the injury is to persons off the premises in which situation the owner continues

5

> liable for ordinary negligence arising from conditions of disrepair, or dangerous activities carried on by his tenant.

*Id.* (citations omitted). Notably, these exceptions to the general rule that landlords are not liable for injuries suffered on the leased premises have been held to "ONLY concern themselves with the landlord's liability for acts directly connected with the physical condition of the leased premises, or the lack thereof, to remedy unsafe conditions on the premises after possession passes to the tenant." *Gabaldon*, 1999-NMSC-039, ¶ 28 (emphasis in original) (internal quotation marks and citation omitted).

{7}    This principle was recognized in *Gabaldon*, when our New Mexico Supreme Court reversed this Court's opinion recognizing a new cause of action against a landlord that created liability for conditions on the property that he owns but does not control based on the theory of negligent entrustment. *Gabaldon*, 1999-NMSC-039, ¶¶ 38-39. In that case, our Supreme Court identified circumstances under which a duty may be owed by non-possessory landlords and restricted liability to those exceptions traditionally recognized in landlord/tenant jurisprudence. *Id.* ¶¶ 25-39. The Court stated that "the legal position of a non-possessory landlord is not one of immunity or privilege[, it] is simply the same legal position offered by sellers of property. [Landlords] are simply not, as a matter of law, responsible for what takes place on

6

land they do not possess, and do not have a right to control." *Id.* ¶ 30 (alteration in original) (internal quotation marks omitted).

**{8}** In the present case, the Johnsons rented the property to Hatch, and under the lease, they neither possessed nor controlled the property. Plaintiff argues that the Johnsons nonetheless maintained control and possession over the property because of specific terms in the lease that banned business use and hazardous material storage, required single family use, required approval for pets on the property, barred subletting, and allowed the landlord reasonable access to the residence for inspection and repair. Yet, these lease terms do not provide the Johnsons with ongoing, post-rental possession and control. Our Supreme Court in *Gabaldon* held that lease terms markedly similar to these at issue do not empower the landlord with the ability to possess and control the leased property. *Id.* ¶ 29 The Court explicated that "[a]lthough . . . the lease agreement [at issue there] granted [the landlord] a percentage of [the tenant]'s gross receipts and [the landlord] also reserved rights to repair, inspect the [property] and to approve such activities by [the tenant], there [wa]s no evidence that [the landlord] controlled the [property]." *Id.* (internal quotation marks omitted). The Court elaborated that the landlord "did not manage the day-to-day operations of the premises nor did it in any way control the activities occurring on the leased property." *Id.* Likewise, the Johnsons did not gain or retain control over the property

7

simply by including lease terms regarding the use of and ability to reenter, make approvals of tenant activity, and inspect the property. The Johnsons similarly did not manage Hatch's use of the property nor did they control the activities occurring on it.

**{9}** Plaintiff attempts to distinguish *Gabaldon*, which involves a commercial lease, by asserting its inapplicability to the present residential lease. Yet Plaintiff fails to articulate why an otherwise similar residential lease, contrasted to a commercial lease, would oppositely provide the Johnsons with a greater ability to possess and control leased premises than in the commercial setting. To the contrary, under the lease terms discussed above, the Johnsons expressly lack the ability to control the day-to-day activities occurring on, or the operation of, the property. That the property at issue is residential, as opposed to commercial, is an unavailing distinction that fails to justify our departure from clear precedent and established analysis. Moreover, Plaintiff failed to present any evidence in her response to the Johnsons' motion for summary judgment, other than the lease agreement itself, to factually establish that the Johnsons control activities or operations at the leased property, or uses of it. Under our jurisprudence, as non-possessory landlords, the Johnsons cannot be liable for Plaintiff's injuries caused by their tenant's pit bull.

**{10}** Also in an effort to establish a duty not otherwise present in our caselaw, Plaintiff contends that "if the [Johnsons] had performed their duty to inspect the

8

subject rental property[,] . . . the subject animal would have been identified and corrective measures could have been taken in order to avoid the [dog] attack upon [Plaintiff]." But this is not consistent with New Mexico's established rules regarding liability for dog bite injuries. "UJI 13-506 [NMRA] embodies New Mexico's doctrine of liability of dog owners for injuries caused by vicious dogs." *Smith v. Vill. of Ruidoso*, 1999-NMCA-151, ¶ 8, 128 N.M. 470, 994 P.2d 50. Distinct from the question of a landlord's duty, this instruction provides that "[a]n owner of a dog is liable for damages proximately caused by the dog if the owner knew, or should have known, that the dog was vicious or had a tendency or natural inclination to be vicious." UJI 13-506. Thus, a core requirement before even a dog owner can be held liable for his dog's actions is knowledge of that dog's vicious propensities, or information sufficient to confer such knowledge in the absence of it. The district court was correct to note that no duty can exist where Plaintiff "presented no evidence that the Johnsons knew, or should have known, that the dog was dangerous or aggressive." Certainly, the standard for liability to attach is not lower for landlords than it is for the actual owner of a dog.

{11} Plaintiff also argues that "in the present case, the [Johnsons] retained the duty and obligation to maintain and repair the entire subject residential property [such that] under *Lommori*, [1957-NMSC-089, ¶ 2,] . . . the [Johnsons] would be held liable for

9

the injuries suffered by [Plaintiff]." We first note that *Lommori* dealt with a physical defect in the property, where a passerby was injured by a falling windowpane. There, our Supreme Court stated that where the landlord "has covenanted with the tenant to make repairs, he is liable to the passer-by for the injuries inflicted." *Id.* ¶ 21 (internal quotation marks and citation omitted).

{12}     We disagree with Plaintiff's application of *Lommori*. The presence of Hatch's pit bull is not a physical defect to be repaired on the leased property. Nor does housing one singularly constitute an inherently dangerous activity. *See Garcia v. Vill. of Tijeras*, 1988-NMCA-090, ¶ 31, 108 N.M. 116, 767 P.2d 355 (upholding an ordinance banning ownership of American Pit Bull Terriers within the Village of Tijeras on substantive due process grounds, but noting that in doing so "we do not intend to condemn the . . . breed as a whole" and recognizing that "there are good pit bulls and bad pit bulls" (internal quotation marks omitted)). But most critically, whether the Johnsons did or did not inspect the property, Plaintiff provides no evidence whatsoever to show that this pit bull was known to be dangerous by reference to any specific event or by a pattern of observable behavior such that would require any action on the part of the Johnsons. Thus, under UJI 13-506's baseline framework of duty applied in the context of dog bite liability, and limited in scope by *Lommori* and *Gabaldon*, facts are not sufficiently alleged to withstand summary judgment. Upon

10

the facts pleaded by Plaintiff herein, the Johnsons could not have known that this dog was cause for concern.

**{13}** Despite the foregoing, Plaintiff contends that we should conclude, as a matter of public policy, that she was owed a duty by the Johnsons. Plaintiff opines that "to adopt the [Johnsons'] position[] that no duty was owed to [Plaintiff], would be to allow owners of residential rental propert[ies] to turn a blind eye to those dangers which exist upon the propert[ies] and walk away from responsibility for injuries and damages suffered by innocent third[]parties."

**{14}** We again disagree. In *Gabaldon*, with regard to this very argument, our Supreme Court chose not to "unwittingly impose unreasonable and uncertain duties" on landlords. 1999-NMSC-039, ¶ 37 (internal quotation marks and citation omitted). Our Supreme Court explained that to do so would obligate "the [landlord] to guarantee the acts of a [tenant and] effectively require independent investigation to establish each [tenant']s fitness to use each [property], and would be manifestly unreasonable." *Id*. (internal quotation marks and citation omitted). Our Supreme Court opined that the "potential liability of engaging in [leasehold] transactions might prove too costly and have a chilling effect on the free flow of commerce." *Id*. Based on this policy, the Court chose not to saddle lessors with an impracticable duty of care in renting their properties to tenants. *See id*. We follow suit in concluding that, even as a matter of

11

public policy, the Johnsons did not owe a duty of care to protect Plaintiff from Hatch's pit bull.

**B.      The Bernalillo County Ordinance Does Not Establish a Duty**

{15}      Separate from Plaintiff's effort to establish a landlord's legal duty to ensure the suitability of tenants and guard against day-to-day activities that could be potentially hazardous to passers-by, Plaintiff contends that under chapter six of the Bernalillo County Animal Care Services Ordinance (2013) (BCACSO), a duty was owed by the Johnsons to protect against Hatch's pit bull. Yet Plaintiff misconstrues the provision she cites, Section 6-31, and the ordinance itself. Section 6-31 solely defines terms to be applied in the administration of the BCACSO. The definition within Section 6-31 as quoted and relied on by Plaintiff states:

> Owner/Responsible Party means a person [eighteen] years of age or older or the parent or guardian of a person under [eighteen] years of age who owns, harbors, keeps an animal, has one in his care, or permits an animal to remain on or about the premises owned or controlled by him.

Plaintiff contends that pursuant to this definition, the Johnsons "are owners/responsible parties as it relates to the subject pit bull . . . [because] merely granting the right for the animal to remain on or about the premises" is sufficient to meet the definition. Plaintiff cites no other ordinance provision of the BCACSO or

12

statute in connection with this definition to support establishment of a duty owed by the Johnsons to protect Plaintiff from a dog housed at the leased property.

{16}     Although we need not resolve arguments that are not adequately developed, *see Headley v. Morgan Management Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076, we nonetheless address the lone provision cited by Plaintiff and conclude that in the context of the BCACSO, the definition of "owner or responsible party" does not create a statutory duty. Although the term is defined in a manner that does not expressly exclude landlords who do not occupy or control leased premises, nothing within the ordinance, when considered alongside that term, indicates an intent to impose liability upon non-occupying property owners for the actions of a dog unknown to them to be present or dangerous. Rather, the ordinance established responsibilities associated with owning pets within the County of Bernalillo. For example, Section 6-40 governs circumstances wherein an owner's animals are known to have bitten a person. It prescribes duties associated with reporting the event and surrender of the animal to the "animal care services department," along with notification regarding ensuing medical treatment of the person injured. Likewise, Section 6-67 imparts duties associated with "dangerous animals." Section 6-31 defines a "dangerous animal" to be an animal which, "when unprovoked, engages in behavior that requires a defensive action by a person to prevent bodily injury" or "injures a

13

person." Likewise, a "vicious animal" is defined to be "an animal which kills or severely injures . . . a person." Other provisions prescribe responsibilities associated with "animals running at large," *see* § 6-51, or "vicious or dangerous animals," *see* § 6-67. Each provision addresses known scenarios associated with animals in Bernalillo County; none address any heightened level of legal duty to be borne by landlords that lease property to pet owners. Similarly, Sections 6-41 and 6-44 establish requirements for animal licenses and vaccines, a responsibility surely not assignable to or shared by a landlord.

{17} These provisions are consistent with the expressed legislative intent of the ordinance, which is to "protect residents from annoyance and injury" and "encourage responsible *ownership* of animals as pets[.]" Section 6-30 (emphasis added). Its provisions advance these goals and lack the expression of language sufficient to convince us that the long-established rules of both landlord liability and dog bite liability should be upended to create what would, in essence, be a new cause of action. The definitions cited by Plaintiff cannot, considered as part of the whole ordinance, be construed to establish a duty owed by the Johnsons to Plaintiff.

{18} Assuming arguendo that the definition of "owner/responsible party" was meant to generally establish what Plaintiff contends, its remaining language fails to define the existence and scope of whatever ensuing duty the Johnsons would owe Plaintiff

14

under the BCACSO. And even if we were to construe the language of a definitional statement within a local ordinance to signal a newly created duty, Plaintiff provided no evidence indicating that the pit bull at issue was "own[ed], harbor[ed,] or [kept]" or otherwise "permit[ted]" by the Johnsons to be present on the leased premises. *See* § 6-31. This failure, in addition to a lack of evidence that the pit bull at issue was known or considered to be a dangerous animal, factually justifies summary judgment. Without such evidence, the Johnsons could bear no duty pursuant to the definition established in Section 6-31 to address a problem that they had no way of knowing or predicting existed regarding an animal to which no evidence of dangerous propensities was known or provided. As such, we agree with the district court that the Johnsons cannot be held liable for Plaintiff's injuries.

**C.    No Disputed Material Facts Exist**

{19}    Lastly, Plaintiff contends that there are numerous disputed issues of material fact that prevented the proper utilization of summary judgment. Even assuming Plaintiff's factual allegations are true, however, the Johnsons legally owed no duty to Plaintiff under the facts of this case, as we have explained above. Since we have concluded that the district court properly found there was no duty, we do not address Plaintiff's contentions regarding the remaining elements of negligence. *See Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 27, 142 N.M. 583,

15

168 P.3d 155 ("Determining the existence of a duty is a question of law for the court[.]").

**III.  CONCLUSION**

{20}  For the reasons stated above, we affirm the district court's grant of summary judgment.

{21}  **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**


**WE CONCUR:**


_____

**RODERICK T. KENNEDY, Chief Judge**


_____

**JONATHAN B. SUTIN, Judge**