421 P.2d 771

W. E. MATHERS, A. D. Jones, on behalf of the Estate of A. D. Jones, Roy E. Nelson, Roy Epperson, Bill Roach, Nancy C. Epperson, T. E. Harris, J. D. Guye, Myrtle M. Moore, George W. Morris, Bill Bogle, on behalf of Bogle Farms, Walter W. Anderson, Lyman R. Graham, Norman Cross and John Moore, Protestants-Appellees,

v.

TEXACO, INC., Applicant-Appellant, S. E. Reynolds, State Engineer of New Mexico, Respondent-Appellant.

No. 7921.

Supreme Court of New Mexico.

Oct. 31, 1966.

Rehearing Denied Jan. 4, 1967.

Robert W. Ward, Lovington, for appellees.

Hinkle, Bondurant & Christy, Paul W. Eaton, Jr., Roswell, W. N. Sands, Johnston S. Rowe, Midland, Tex., for applicant-appellant.

Boston E. Witt, Atty. Gen., F. Harlan Flint, Special Asst. Atty. Gen., for respondent-appellant.

## OPINION

LaFEL E. OMAN, Judge, Court of Appeals.

The applicant-appellant, Texaco, Inc., hereinafter referred to as Texaco, filed applications with the State Engineer for permits to appropriate 700-acre feet of water per year from the Lea County Underground Water Basin. Upon the hearing of the applications and the protests thereto, the respondent-appellant, the State Engineer, hereinafter referred to as the State Engineer, made and entered findings and an order that the applications should be granted for the appropriation by Texaco of 350-acre feet per year for the purpose of water flooding 1,360 acres of oil-bearing formation in a producing oil field. By this water flooding operation, which has been approved by the New Mexico Oil Conserva-

tion Commission, it is contemplated that slightly in excess of one million barrels of oil will be recovered.

The protestants-appellees, hereinafter referred to as protestants, who had acquired prior rights to appropriate waters from the Lea County Underground Water Basin, appealed to the district court of Lea County from the findings and order of the State Engineer. The trial judge, after careful consideration of the respective contentions of the parties, predicated his decision upon what he conceived to be the law applicable to the facts as reflected in the record of the hearing before the State Engineer, as is required by the decisions of this court. Continental Oil Co. v. Oil Conservation Comm., 70 N.M. 310, 373 P.2d 809; Kelley v. Carlsbad Irrigation Dist., 71 N.M. 464, 379 P.2d 763; Ingram v. Malone Farms, Inc., 72 N.M. 256, 382 P.2d 981; Derrick v. Reynolds, 74 N.M. 181, 392 P.2d 13; Durand v. Reynolds, 75 N.M. 497, 406 P.2d 817. He concluded that the findings and order of the State Engineer were contrary to the evidence, and therefore, arbitrary, unreasonable and unlawful. Judgment was entered accordingly, and from this judgment Texaco and the State Engineer have taken this appeal.

There is no question concerning the following facts:

(1) The use of the water for the proposed flooding of the oil field is a reasonable and beneficial use;

(2) The fresh water in the Lea County Underground Water Basin is found in the Ogalalla formation which varies in thickness from a thin edge to something over 200 feet;

(3) The waters in the basin are replenished only by surface precipitation, which is very limited, and which is just about equalled by a natural discharge from the basin. Thus, for all practical purposes, no recharge takes place, and the pumping of any water from the basin depletes the stock or supply to that extent, and in effect amounts to a mining operation;

(4) In 1952 the State Engineer made a determination of the amount of water in each township in the basin, the amount of water that had been appropriated in each township, and the amount of water that would be drawn from the stock or supply in each township into the surrounding townships, when the waters in the surrounding townships were fully appropriated.

In determining what constitutes full appropriation in each township, and thus in the basin as a whole, he calculated the amount of water that could be withdrawn from each township, and still leave one-third of the water in storage at the end of forty years. At that time it was contemplated that some of the remaining water could be economically withdrawn for domestic, and perhaps some other uses, but that it would no longer be economically

feasible to withdraw the water for agricultural and most other purposes.

On the basis of this method of administration and operation established in 1952, there remains and is available for appropriation by Texaco the 350-acre feet per year which the State Engineer granted;

(5) The appropriation of the water by Texaco will unquestionably lower the water table in the wells of the protestants, and will result in an increase in pumping costs and in shortening the time during which the protestants can economically pump water from their wells.

In the trial court the protestants attacked the validity of the method of administration and operation of the basin which was adopted in 1952 by the State Engineer as aforesaid, and which method has been followed since its adoption. The trial court rejected this attack and held the body of the State's water laws, although primarily designed for application to waters whose supply is constantly being renewed, is applicable to non-rechargeable basins, such as the Lea County Underground Water Basin. He also expressed it as his opinion that it would be impossible for the State Engineer to perform the duties imposed upon him by law, without attempting to determine and fix a time estimated as the economic life of the basin. The mere fact that this determined and fixed time is less than perpetuity, did not, in the opinion of the trial judge, take away the powers imposed upon the State Engineer by law to supervise the basin.

We agree with these views of the trial judge. See Bagley, Water Rights Law and Public Policies Relating to Ground Water "Mining" in the Southwestern States, 4 J.L. & Economics 144 (1961), and Trelease, Policies for Water Law: Property Rights, Economic Forces, and Public Regulation, 5 Natural Resources J. 1–48 (1965), for excellent articles dealing, at least in part, with the very problems presented in this case, some of the courses which have been and are being pursued toward a solution of these problems, and some suggested courses of solution.

Protestants have sought in this court to make the same attack made below upon the State Engineer's method of administration and operation of the basin, but no cross-appeal was taken pursuant to the provisions of Supreme Court Rule 17(2), which appears as § 21–2–1(17) (2), N.M.S.A.1953, and the propriety of this method of administration has not been raised by the points relied on by appellants for reversal.

■ The administration of a non-rechargeable basin, if the waters therein are to be applied to a beneficial use, requires giving to the stock or supply of water a time dimension, or, to state it otherwise, requires the fixing of a rate of withdrawal which will result in a determination of the economic life of the basin at a selected time.

The very nature of the finite stock of water in a non-rechargeable basin compels a modification of the traditional concept of appropriable supply under the appropriation doctrine. Each appropriation from a limited supply of non-replaceable water of necessity reduces the supply in quantity and shortens the time of use to something less than perpetuity. Each appropriator, subsequent to the initial appropriation, reduces in amount, and in time of use, the supply of water available to all prior appropriators, with the consequent decline of the water table, higher pumping costs, and lower yields.

This leads us directly to the main issue on this appeal, and that is whether or not the rights of prior appropriators are impaired, because a subsequent appropriator, by withdrawing waters fom a non-rechargeable basin, causes a decline in the water level, higher pumping costs, and lower pumping yields. It was the view of the trial court that the taking of any water from the basin, which could never be replaced, amounted to an impairment of existing rights. He expressed his view in his Finding of Fact No. 11 in the following language:

"The undisputed evidence in the case supports the premise that the taking of any water from the basin depletes the basin to the extent of the amount of water taken, and this can never be replaced. The undisputed evidence clearly shows impairment to existing rights would result from the granting of the Texaco applications."

Protestants take the position that an application for a permit to withdraw waters from an underground basin must be denied if the evidence establishes that such withdrawal will cause a decline in the water table, because prior appropriators will, of necessity:

"  *   *   * be damaged and their rights impaired by the lowering of the water table through the shortening of the useful life of the wells, the additional lift costs and the decline in the ability to produce in proportion to a square, making it necessary to drill more wells to produce the same amount of water.  *   *   *"

If the position of protestants be correct, then Texaco, as stated in its brief in chief,

"  *   *   * shot itself out of the saddle with its own undisputed evidence that the Lea County basin is a *non-rechargeable* basin, that the taking of any water from it constitutes a *mining* operation, and that its appropriation for what the court found was a reasonable and beneficial use could 'never be replaced'."

In fact, if the position of protestants be correct, then each and all of the many permits to withdraw waters from this basin issued by the State Engineer, subsequent to the initial permit, have been issued wrongfully and unlawfully, because each

withdrawal, to some degree, has caused a lowering of the water level, and thus an impairment of the rights of the initial appropriator.

Protestants particularly rely upon our decisions in the cases of Spencer v. Bliss, 60 N.M. 16, 287 P.2d 221; In re Hobson, 64 N. M. 462, 330 P.2d 547, and Heine v. Reynolds, 69 N.M. 398, 367 P.2d 708. The decision in the Spencer case was that an applicant has the burden of proving that existing rights will not be impaired, and that the record in that case was absolutely devoid of such proof. The decision in the Hobson case also was that the applicant had failed in his burden of showing that the proposed changes would not impair existing rights. Neither of these cases supports the position that a lowering of the water level in a basin by a proposed appropriation constitutes an impairment of existing rights as a matter of law.

The decision in the Heine case is in accord with the decisions in the Spencer and Hobson cases. We repeated that the burden is on the applicant to show that there will be no impairment of existing rights. We also stated that the State Engineer, having performed his positive duty of determining whether or not existing rights would be impaired, did not have the duty to further determine the degree or amount of impairment, if he should find existing rights would be impaired. This in no way requires a finding of impairment of existing rights merely because of a decline in the water level. We expressly recognized that the question of impairment of existing rights is one which must generally be decided upon the facts in each case, and that a definition of "impairment of existing rights" is not only difficult, but an "attempt to define the same would lead to severe complications."

In the case of Application of Brown, 65 N.M. 74, 332 P.2d 475, we recognized that " * * * The lowering of a water table in any particular amount does not necessarily constitute an impairment of water rights of adjoining appropriators. * * * " This must, of necessity, be true in a non-rechargeable basin such as the one here involved, if the water is to be put to a beneficial use, and if the use is to be made available to more than the initial appropriator.

The only premise upon which the position of protestants can be logically supported is that "existing rights" embraces the element of perpetuity. As above stated, the beneficial use by the public of the waters in a closed or non-rechargeable basin requires giving to the use of such waters a time limitation. In the case of the Lea County Underground Water Basin, that time limitation was fixed by the State Engineer in 1952 at forty years, after having first made extensive studies and calculations. There is nothing before us to prompt a feeling that this method of administration

and operation does not secure to the public the maximum beneficial use of the waters in this basin.

The rights of the protestants to appropriate water from this basin are subject to this time limitation, just as are the rights of all other appropriators. A lowering of the water level in the wells of protestants, together with the resulting increase in pumping costs and the lowering of pumping yields, does not constitute an impairment of the rights of protestants as a matter of law. These are inevitable results of the beneficial use by the public of these waters.

Section 75–11–3, N.M.S.A.1953, provides in part that:

"* * * the state engineer shall, if he finds that there are in such underground stream, channel, artesian basin, reservoir or lake, unappropriated waters, or that the proposed appropriation would not impair existing water rights from such source, grant the said application and issue a permit to the applicant to appropriate all or a part of the waters applied for subject to the rights of all prior appropriators from said source. * * *"

The State Engineer found that there were unappropriated waters, and that the appropriation granted would not impair existing rights. As above stated, on the basis of the method of administration and operation established in 1952, there were available for appropriation by Texaco the 350-acre feet of water per year.

Section 75–11–7, N.M.S.A.1953, which is the particular section of our statute involved in the cases relied upon by protestants and to which reference is above made, relates to the change of location of a well, or the change of the use of the water. The matter of appropriation of unappropriated waters was not involved in those cases, and is not involved in the approval or rejection of an application filed pursuant to the provisions of § 75–11–7, N.M.S.A.1953.

The trial court was in error in concluding that there is no unappropriated water in the particular townships in question and in the entire Lea County Underground Water Basin, which can be appropriated without impairing existing rights. He also erred in concluding that the order of the State Engineer granting the Texaco applications will impair the prior existing rights of the protestants, that this order is contrary to the evidence, and that it is, therefore, arbitrary, unreasonable and unlawful.

The second point relied on for reversal is the asserted error of the trial court in concluding as follows:

"5. That under the laws of the State of New Mexico, valid water rights to water in an underground water basin having reasonably ascertainable bounda-

ries cannot be held in gross but must be applied to irrigation or to an industrial use to which such water rights will attach and in whose owner such rights will become vested; that as the applications of Texaco, Inc. seek to appropriate water from the Lea County Underground Water Basin in gross and fail to set forth a specific industrial entity or owner for which and in which the water rights sought to be appropriated can vest, such applications are void."

The applications were made on forms furnished and prescribed by the State Engineer; they were made by and in the name of Texaco, Inc. as applicant; they designate the underground basin from which the water is proposed to be appropriated; they designate the beneficial use to which it is proposed to apply such water; they designate the location of the proposed wells, they name the owner of the lands on which the wells will be located; they designate the amount of water applied for; and they designate the use for which the water is desired.

The particular statutory provisions pertinent to the question are as follows:

Section 75-11-1, N.M.S.A.1953 provides in part:

"The water of underground streams, channels, artesian basins, reservoirs, or lakes, having reasonably ascertainable boundaries, are hereby declared to be public waters and to belong to the public

and to be subject to appropriation for beneficial use. * * *" .

Section 75-11-2, N.M.S.A.1953 provides:

"Beneficial use is the basis, the measure and the limit to the right to the use of the waters described in this act."

Section 75-11-3, N.M.S.A.1953 provides in part:

"Any person, firm or corporation desiring to appropriate for irrigation or industrial uses any of the waters described in this act [75-11-1 to 75-11-10] shall make application to the state engineer in a form to be prescribed by him in which said applicant shall designate the particular underground stream, channel, artesian basin, reservoir or lake from which water is proposed to be appropriated, the beneficial use to which it is proposed to apply such water, the location of the proposed well, the name of the owner of the land on which such well will be located, the amount of water applied for, the use for which it is desired and if the proposed use is irrigation, the description of the land to be irrigated and the name of the owner thereof. * * *"

■■ We find nothing in our statutes which requires that an application for a permit to appropriate public waters for a beneficial use must be made in the name of any particular person, or in the names of all persons who may be benefited by such use. Our decisions in the cases of

Millheiser v. Long, 10 N.M. 99, 61 P. 111; and Snow v. Abalos, 18 N.M. 681, 140 P. 1044, cited by protestants, fail to support the trial court's conclusion. Here the applicant, Texaco, has expressly specified the particular use for which the water is to be appropriated and the precise lands to which the same is to be applied to accomplish the purpose of such use. The fact that the owner of the lands, or all the holders of leaseholds or other interests in the lands and in the oil to be recovered, are not named in the applications is not a valid reason to hold the applications void.

Sections 75–5–22 and 75–5–23, N.M.S.A. 1953, expressly recognize that the right to use water upon certain lands may be severed from such lands and become appurtenant to other lands, or may be transferred for other purposes and other uses.

Sections 68–2–1 to 68–2–23, N.M.S.A. 1953, relate to the incorporation of water works companies and the powers which such companies may exercise. Section 68–2–1, N.M.S.A. 1953 provides that these companies may be incorporated,

"* * * for the purpose of constructing and maintaining reservoirs and canals, or ditches and pipelines, for the purpose of supplying water for the purpose of irrigation, mining, manufacturing, domestic and other public uses, including cities and towns * * *."

Clearly these statutes do not require forms different from those submitted or procedures other than those followed in this case in order to effect a valid appropriation. Persons who divert or withdraw waters from a stream or basin, need not be the ones who ultimately make the beneficial use thereof, or for whose benefit the use is made. Albuquerque Land & Irrigation Co. v. Gutierrez, 10 N.M. 177, 61 P. 357; Scherck v. Nichols, 55 Wyo. 4, 95 P.2d 74; In re Water Rights of Hood River, 114 Or. 112, 227 P. 1065. Certainly there is nothing in our law which requires that an application to appropriate public waters for a beneficial use must be made by or in the names of all persons who may ultimately use or be benefited by such use.

We hold that the applications were in proper form, and that the order of the State Engineer, granting Texaco the right to use 350-acre feet of water per year for the stated purpose of secondary recovery of oil by flooding 1,360 acres, should have been affirmed.

We have considered all the other arguments and matters urged upon us by the protestants, but we find the same to be without merit, insofar as this appeal is concerned.

The judgment of the trial court overruling and reversing the findings and order of the State Engineer is hereby reversed.

It is so ordered.

MOISE and COMPTON, JJ., concur.