IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMSC-037

Filing Date:  July 25, 2013

Docket No.  32,713

HORACE BOUNDS, JR.,

       Plaintiff-Petitioner,

v.

STATE OF NEW MEXICO, ex rel.
JOHN R. D'ANTONIO, JR., New Mexico State Engineer,

       Defendant-Respondent.

and

Docket No. 32,717

NEW MEXICO FARM & LIVESTOCK BUREAU,

       Intervenor-Petitioner,

v.

STATE OF NEW MEXICO, and JOHN R. D'ANTONIO, JR.,
NEW MEXICO STATE ENGINEER,

       Defendants-Respondents

ORIGINAL PROCEEDINGS ON CERTIORARI
J.C. Robinson, District Judge

Law Office of Beverly Singleman
Beverly J. Singleman
Mesilla Park, NM

Miller Stratvert, P.A.
Joshua L. Smith
Las Cruces, NM

1

for Petitioner Horace Bounds

Hennighausen & Olsen, L.L.P.
Arnold J. Olsen
Alvin F. Jones
Jeff Grandjean
Roswell, NM

for Petitioner New Mexico Farm & Livestock Bureau

D.L. Sanders
Martha Clark Franks
Santa Fe, NM

for Respondents

Eugene I. Zamora
Marcos D. Martinez
Santa Fe, NM

for Amicus Curiae City of Santa Fe

Calvert Menicucci, P.C.
Sean R. Calvert
Albuquerque, NM

Kegler, Brown, Hill & Ritter, Co. L.P.A.
Donald W. Gregory
Jeremiah E. Thomas
Columbus, OH

for Amicus Curiae National Ground Water Association

Peifer, Hanson & Mullins, P.A.
Tiffany Elaine Dowell
Albuquerque, NM

Law Offices of Jesse J. Richardson, Jr.
Jesse J. Richardson, Jr.
Blacksburg, VA

for Amicus Curiae Water Systems Council

Taylor & McCaleb, P.A.

Jolene Lucille McCaleb
Elizabeth Newlin Taylor
Corrales, NM

for Amicus Curiae New Mexico Ground Water Association

Law & Resource Planning Associates, P.C.
Charles Thomas DuMars
Stephen Curtice
Albuquerque, NM

for Amici Curiae 4 Daughters Land & Cattle Company, Great Western Ranch, LLC, Sanders Land & Cattle, Inc.

**OPINION**

**BOSSON, Justice.**

**{1}**     Horace Bounds is a rancher and farmer in the Mimbres basin in southwestern New Mexico, a fully appropriated and adjudicated basin.  Bounds, joined by the New Mexico Farm and Livestock Bureau (collectively Petitioners), brought a facial constitutional challenge against the New Mexico Domestic Well Statute (DWS), NMSA 1978, Section 72-12-1.1 (2003), which requires the State Engineer to issue domestic well permits without determining the availability of unappropriated water.  Petitioners contend that the DWS violates the New Mexico constitutional doctrine of prior appropriation as well as due process of law.  Petitioners' arguments persuaded the district court but not the Court of Appeals, which reversed in a published opinion.  Agreeing with the substance of that opinion, we affirm the Court of Appeals.  For the reasons that follow, we hold that the DWS does not violate either the doctrine of prior appropriation set forth in the New Mexico Constitution or the guarantees of due process of law.

**BACKGROUND**

**{2}**     Bounds has the adjudicated right to irrigate 157.63 acres of farm and ranchland with some of the most senior surface water rights along the Upper Mimbres.  At the time of this suit, Bounds had fewer than 100 head of cattle, and much of his water rights were used for irrigated pasture to support the herd; the primary purpose of the farm is livestock feed.

**{3}**     This case began on June 15, 2006, when Bounds filed an action for declaratory judgment in the Sixth Judicial District Court.  The first count of his complaint asked the district court to declare the DWS unconstitutional because it requires the State Engineer to issue domestic well permits without regard to the availability of unappropriated water, to the detriment of senior water users and in violation of the doctrine of prior appropriation.  The second count sought a declaration that the issuance of domestic well permits under the DWS

3

constitutes a taking of vested property rights without compensation, in violation of the United States Constitution, the New Mexico Constitution, and 42 U.S.C. § 1983 (2006). Finally, Bounds sought an injunction preventing the State Engineer from issuing new domestic well permits without first determining that unappropriated water is available.

**{4}**     Before he filed this suit asking the district court to enjoin the State Engineer from issuing further permits under the DWS, Bounds took full advantage of the statute's simple permitting procedures. According to the record, he currently has five domestic and livestock wells, most recently drilled in 2005 and all acquired under the same permitting process that Bounds now challenges. Bounds also enjoyed the benefit of this statute when he subdivided and sold a portion of his farm in 1998. According to the State Engineer, the twelve-lot "subdivision was approved by Grant County, New Mexico, for the sale of individual lots to be served by domestic wells." Jo Bounds, Horace's wife, testified that four of the twelve lots have been developed, leaving five to eight lots yet to drill domestic wells.

**{5}**     The New Mexico Farm and Livestock Bureau (NMFLB) filed a motion to intervene. NMFLB is an independent, nongovernmental entity that represents over 14,000 farm and ranch families, and advocates on their behalf in the state Legislature as well as in state and federal courts. The district court granted the motion to intervene.

**{6}**     After the case was delayed for reasons not relevant to this appeal, the State Engineer filed a motion for summary judgment. The State Engineer argued that the DWS "is a clear expression of legislative intent to treat certain necessary water uses differently," and that "[i]n creating this distinction, the Legislature has articulated a class of uses of public water that is reasonably subject to treatment outside the scope of the general scheme of appropriations." Thereafter, the parties stipulated to allowing the court to decide the legal issues presented on the pleadings, record, and evidence submitted.

**{7}**     The district court ultimately concluded that the DWS is unconstitutional as a matter of law "because it creates an impermissible exception to the priority administration system." The court reasoned that "[i]t is not logical, let alone consistent with constitutional protections, to require the [State Engineer] to issue domestic well permits without any consideration of the availability of unappropriated water or the priority of appropriated water." In addition, the court found a lack of evidence to support Bounds' claim of impairment of existing rights or his claim to related monetary damages. The court dismissed Bounds' takings claim. The State Engineer appealed the district court's constitutional ruling to the Court of Appeals.

**{8}**     Reversing the district court, the Court of Appeals declared that the prior appropriation doctrine, enshrined in Article XVI of the New Mexico Constitution, is "a broad priority principle, nothing more," an observation that has caused consternation among New Mexico's water community. *Bounds v. State*, 2011-NMCA-011, ¶ 37, 149 N.M. 484, 252 P.3d 708. Noting that the prior-appropriation doctrine in the New Mexico Constitution is not self-executing, the Court of Appeals observed that "a particular priority administration

4

process is not dictated by the priority doctrine but instead is in the Legislature's hands pursuant to its authority to enact statutes providing for the administration of appropriation and use of surface and groundwater." *Id. ¶ 42.* Ultimately, the Court of Appeals concluded that

> the priority doctrine [in the New Mexico Constitution] is not a system of administration. It does not dictate any particular manner of administration of appropriation and use of water or how senior water rights are to be protected from junior users in time of water shortages. That the Legislature determines that domestic well permits are to be issued upon application without prior evaluation of water availability or impairment is not, in and of itself, a per se violation of the priority doctrine or of the Legislature's constitutional duty to assure that senior water rights are protected under the priority doctrine. Although a basin is considered fully appropriated with no unappropriated water available, we do not see how the Legislature is forbidden under a facial constitutional attack from nevertheless enacting an exception to its existing statutory regime permitting additional appropriation for domestic purposes as long as senior water rights are not in fact impaired or subject to impending impairment . . . .

*Id. ¶ 45.*

**{9}** Bounds and NMFLB filed separate petitions for certiorari to review both the holding and the reasoning of the Court of Appeals opinion in light of its broad public policy implications, which this Court granted. *See* 2011-NMCERT-001, 150 N.M. 558, 560, 263 P.3d 900, 902. For the reasons that follow, we affirm the facial constitutionality of the DWS.

**DISCUSSION**

**A.      Standard of Review**

**{10}** Petitioners present two basic arguments for consideration. First, because the DWS requires the State Engineer to issue domestic well permits without regard to whether unappropriated water is available, the DWS creates an impermissible exception to the language of Article XVI, Section 2 of the New Mexico Constitution which states that "priority of appropriation shall give the better right." Second, a failure to provide notice and an opportunity to be heard prior to issuing a domestic well permit violates Petitioners' due process rights.[1]

---

[1]Other arguments, such as equal protection, are mentioned in the briefing but not developed. We decline to address such arguments. *See, e.g.*, *State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) ("[T]his Court will not review issues raised in appellate

**{11}** Each of these arguments presents a constitutional challenge to the DWS. A constitutional challenge to a statute is reviewed de novo. *Tri-State Transmission & Generation Ass'n v. D'Antonio*, 2012-NMSC-032, ¶ 11, 289 P.3d 1232. "'It is well settled that there is a presumption of the validity and regularity of legislative enactments.'" *State ex rel. Udall v. Pub. Emps. Ret. Bd.*, 120 N.M. 786, 788, 907 P.2d 190, 192 (1995) (quoting *Espanola Hous. Auth. v. Atencio*, 90 N.M. 787, 788, 568 P.2d 1233, 1234 (1977)). We will uphold a statute "unless we are satisfied beyond all reasonable doubt that the Legislature went outside the bounds fixed by the Constitution in enacting the challenged legislation." *Id.* We do not "inquire into the wisdom or policy of an act of the Legislature." *Id.* Rather,

> [w]e presume that the Legislature has performed its duty, and kept within the bounds fixed by the Constitution. Further, if possible, we will give effect to the legislative intent unless it clearly appears to be in conflict with the Constitution. We will not question the wisdom, policy, or justness of a statute, and the burden of establishing that the statute is invalid rests on the party challenging the constitutionality of the statute. An act of the Legislature will not be declared unconstitutional in a doubtful case, and . . . if possible, it will be so construed as to uphold it.

*State ex rel. Office of State Eng'r v. Lewis*, 2007-NMCA-008, ¶ 37, 141 N.M. 1, 150 P.3d 375 (alteration in original) (internal quotation marks and citations omitted).

### B.  Preliminary Matters

**{12}** Petitioners' first argument is relatively straightforward. As NMFLB explains,

> [i]n 1972, the State Engineer declared the Mimbres Basin to be closed and as such, no additional water was available for appropriation. Thus, when the State Engineer made the determination that no additional water was available for appropriation, he became bound by the constitutional provisions of N.M. Const. art. XVI, §§ 1, 2, and 3, and NMSA 1978, § 72-12-4. No further permits could be issued for the appropriation of groundwater in the Mimbres Basin.

Accordingly, the argument goes, if the DWS requires the State Engineer to issue domestic well permits when there is no additional water available for appropriation, the statute must necessarily impact senior water users whose rights are secured by the New Mexico Constitution. As an initial matter, we address certain basic flaws in this and other arguments advanced by Petitioners.

**{13}** First and foremost, Petitioners have brought a facial challenge. In the district court,

---

briefs that are unsupported by cited authority.").

Bounds was unable to show any actual injury, any impairment of his existing senior rights as a result of the DWS. Accordingly, Bounds was unable to pursue an as-applied challenge in which specific facts would be relevant and was left with only a facial challenge.

**{14}** However, the facts laid out above—relating specifically to Bounds' situation in the Mimbres basin—are not relevant in a facial challenge.[2] Generally, "[i]n a facial challenge to [a statute], we consider only the text of the [statute] itself, not its application; whereas, in an as-applied challenge, we consider the facts of the case to determine whether application of the [statute] even if facially valid deprived the challenger of a protected right." *Vill. of Ruidoso v. Warner*, 2012-NMCA-035, ¶ 5, 274 P.3d 791 (citing *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006)). Looking at the specific situation in the Mimbres basin—a fully appropriated and fully adjudicated basin—would require us to review the DWS as applied to Bounds, or at least as applied to the basin, and Bounds was unable to prove that the DWS caused any specific injury to himself or others.

**{15}** Second, a separate argument advanced by Bounds—that the issuance of further permits in the Mimbres basin necessarily impairs senior water users—would require this Court, in order to rule for Petitioners, to hold that a new domestic well permit for taking water in a fully appropriated basin, even for only one well, constitutes impairment as a matter of law. Yet, under our well-established case law, this Court has repeatedly rejected the notion of impairment as a matter of law, or per se impairment as it has been called in the past. *See Mathers v. Texaco, Inc.*, 77 N.M. 239, 245-46, 421 P.2d 771, 776-77 (1966); *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶¶ 21-25, 141 N.M. 21, 150 P.3d 971. In *Montgomery* we explicitly stated that

> this Court has refused to make any bright-line rule regarding what constitutes impairment. "[T]he question of impairment of existing rights is one which must generally be decided upon the facts in each case, and . . . a definition of 'impairment of existing rights' is not only difficult, but an 'attempt to define the same would lead to severe complications.'"

*Montgomery*, 2007-NMSC-002, ¶ 21 (alterations in original) (*quoting Mathers*, 77 N.M. at 245, 421 P.2d at 776). Accordingly, there can be no constitutional challenge to the statute without at least a specific probability of impairment in a given case. The constitutional principles of prior appropriation are not in peril when senior water users cannot demonstrate

---

[2]Bounds spent a portion of his briefing arguing that the Court of Appeals ignored the district court's findings of fact and we should defer to such findings. But, "where the challenging party has chosen to mount only a facial challenge, the facts of his or her particular case do not affect our review." *Jackson v. City of Chi.*, 975 N.E.2d 153, 163 (Ill. App. Ct. 2012). The findings of fact made by the district court are certainly not due any deference by an appellate court when answering the purely legal question of a facial challenge.

a concrete risk of impairment—that they are in danger of losing the very water guaranteed them by that same prior appropriation doctrine.

**{16}** Under our precedent, we could decline to reach the merits of this case. That said, however, we exercise our discretion to decide these important issues. As we stated in *City of Albuquerque v. Campos*, "[i]f, as in the present case, the questions of public importance are likely to recur, . . . reason exists for the exercise by this court of its inherent discretion to resolve those questions." 86 N.M. 488, 491, 525 P.2d 848, 851 (1974).

**{17}** In the present case, it would make little sense to dismiss Petitioners' claims because the issues would remain. We would merely be forcing these parties or others to litigate the same issues from the beginning, but in an as-applied challenge, all the while the legal questions regarding the constitutionality of the DWS statute would remain.

**{18}** In addition, we have a Court of Appeals opinion that should be addressed. Before the Court of Appeals, the State Engineer expressed a public-interest "preference" that the judiciary "reach and decide the constitutional issue," a preference to which we are not bound but one which we afford due respect. *See Bounds*, 2011-NMCA-011, ¶ 13. Rather than avoid these difficult but important legal issues, we choose to decide them now as they were briefed by Petitioners and addressed by the State Engineer. We will consider Petitioners' argument as a facial challenge in relation to a fully appropriated, closed, and adjudicated basin.

**C.      Relevant Legal Framework—the New Mexico Constitution, Statutes, and Regulations**

**{19}** Embedded in the New Mexico Constitution are some of the most basic and universal principles of prior appropriation. These include the right to appropriate public waters for beneficial use, one of the defining features of prior appropriation. *See* A. Dan Tarlock, *The Future of Prior Appropriation in the New West*, 41 Nat. Res. J. 769, 770 (2001). Article XVI, Section 2 of the New Mexico Constitution reads: "The unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for beneficial use, in accordance with the laws of the state. Priority of appropriation shall give the better right." It is the language "[p]riority of appropriation shall give the better right" that renders the DWS unconstitutional, according to Petitioners, because the statute requires the State Engineer to issue domestic well permits even in the face of a fully appropriated water basin.

**{20}** In 1953, the New Mexico Legislature passed the predecessor to the current DWS. N.M. Laws 1953, ch. 61, § 1. Similar to the present DWS, then codified at NMSA 1953, Section 75-11-1 (1953), the exemption read, in part, as follows:

> By reason of the varying amounts and time such water is used and the relatively small amounts of water consumed in the watering of livestock, in

irrigation of not to exceed one [1] acre of noncommercial trees, lawn or garden; in household or other domestic use, and in prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural resources of the state of New Mexico, application for any such use shall be governed by the following provisions,

Any person, firm or corporation desiring to use any of the waters described in this act for watering livestock, for irrigation of not to exceed one [1] acre of noncommercial trees, lawn, or garden; or for household or other domestic use shall make application or applications from time to time to the state engineer on a form to be prescribed by him. Upon the filing of each such application, describing the use applied for, the *state engineer shall issue a permit* to the applicant to so use the waters applied for.

*Id.* (emphasis added). Thus, wells for "household or other domestic use," along with other minimally consumptive uses, required an application with certain disclosures, but the language "shall issue" made the permit automatic without publication and notice to other users.

**{21}** The statute remained largely unchanged until 2003. In that year, the Legislature split the statute into separate sections for domestic, livestock, and temporary uses. The new version of NMSA 1978, Section 72-12-1 (2003) remained a policy statement, features language similar to the previous version, and now reads as follows:

The water of underground streams, channels, artesian basins, reservoirs or lakes, having reasonably ascertainable boundaries, is declared to belong to the public and is subject to appropriation for beneficial use. By reason of the varying amounts and time such water is used and the relatively small amounts of water consumed in the watering of livestock; in irrigation of not to exceed one acre of noncommercial trees, lawn or garden; in household or other domestic use; and in prospecting, mining or construction of public works, highways and roads or drilling operations designed to discover or develop the natural resources of the state, application for any such use shall be governed by the provisions of Sections 72-12-1.1 through 72-12-1.3 NMSA 1978.

The portion dealing with domestic wells was recodified to NMSA 1978, Section 72-12-1.1 (2003). It states that

A person, firm or corporation desiring to use public underground waters described in this section for irrigation of not to exceed one acre of noncommercial trees, lawn or garden or for household or other domestic use shall make application to the state engineer for a well on a form to be

9

prescribed by the state engineer. Upon the filing of each application describing the use applied for, the state engineer *shall* issue a permit to the applicant to use the underground waters applied for; provided that permits for domestic water use within municipalities shall be conditioned to require the permittee to comply with all applicable municipal ordinances enacted pursuant to Chapter 3, Article 53 NMSA 1978.

Section 72-12-1.1 (emphasis added).[3]

**{22}** By contrast, NMSA 1978, Section 72-12-3 (2001), sets out the permitting process prescribed for most other ground water appropriations, such as those for agricultural and industrial use, but which does not apply to permits for domestic wells. According to Section 72-12-3(D), the State Engineer is required, upon the filing of an application, to cause notice to be published in a newspaper. Thereafter, any person claiming that the new appropriation will impair existing water rights must be allowed to protest the application. *Id.* Even if no one objects,

> the state engineer shall, if he finds that there are in the underground stream, channel, artesian basin, reservoir or lake unappropriated waters or that the proposed appropriation would not impair existing water rights from the source, is not contrary to conservation of water within the state and is not detrimental to the public welfare of the state, grant the application and issue a permit to the applicant to appropriate all or a part of the waters applied for, subject to the rights of all prior appropriators from the source.

Section 72-12-3(E). According to Petitioners, the requirements of notice, opportunity to be heard, and prior determination of unappropriated waters or lack of impairment found in Section 72-12-3 are required by the New Mexico Constitution to be applied to domestic wells as well.

**{23}** In 2006, the State Engineer promulgated regulations specifically for domestic wells. *See* 19.27.5 NMAC (8/15/2006, as amended through 10/31/2011). These regulations allow the State Engineer to manage domestic wells in various ways. For example, 19.27.5.13 NMAC subjects domestic wells to certain conditions of approval, the most important of which is curtailment to protect existing water rights in times of shortage: "The right to divert water under [a domestic well] permit is subject to curtailment by priority administration as implemented by the state engineer or a court." 19.27.5.13(B)(11) NMAC.

---

[3]The Court thanks 4 Daughters Land & Cattle Company, Great Western Ranch, LLC, and Sanders Land & Cattle, Inc. for their collectively filed amicus brief discussing these issues in relation to livestock wells. While we recognize many similarities between the permitting procedures for these wells and domestic wells, we decline to discuss how the principles discussed in this Opinion relate to livestock wells at this time.

**{24}**    In addition to imposing conditions upon domestic well permits, the regulations also provide for the State Engineer to "declare all or part of a stream connected aquifer as a domestic well management area *to prevent impairment to valid existing surface water rights.*" 19.27.5.14 NMAC (emphasis added). This and other regulations allow the State Engineer to declare a management area and create specific administrative guidelines for that particular basin to ensure that senior surface water users are not harmed by junior domestic wells. *See* 19.27.5.14(A). In addition, the regulations significantly reduce the maximum diversion from new domestic wells in the management area to 0.25 acre-feet per year or even less, as required by the State Engineer. *See* 19.27.5.14(C).

**{25}**    With this background in mind regarding the relevant statutes, regulations, and constitutional provisions, we now turn to Petitioners' allegations of facial unconstitutionality.

**D.      The DWS Is Not Facially Unconstitutional**

**{26}**    Looking at the language in Article XVI, Section 2 of the New Mexico Constitution upon which Petitioners rely—"[p]riority of appropriation shall give the better right"—it is clear that priority administration, including curtailment when justified, is what this Section mandates. "Shall give the *better* right" is a phrase meant to apply to two existing, yet competing, water rights. This phrase implies that two rights are at issue, since if there were only one right, that right could not be *better*, as there would be nothing to be better than. "Priority of appropriation" tells us *how* to determine which right is better. Thus, the entire phrase "priority of appropriation shall give the better right" is meant to dictate how conflicts between water users can be resolved—by priority administration—in which junior users are diminished or cut off when necessary in favor of senior users. In short, this language means that priority administration—exactly what Petitioners desire to protect their senior water rights—may be used to determine how water is allocated in times of shortage. This language deals with how rights, already acquired, will be administered.

**{27}**    This portion of the New Mexico Constitution does not mandate any particular *permitting* procedure. In fact, this language does not appear to pertain to how one *acquires* a water right, as opposed to how that right is *used* and *administered*.

**{28}**    The DWS, on the other hand, is a permitting statute. It dictates the procedure for how one acquires a permit to drill a domestic well. The DWS does relieve the applicant from certain statutory requirements that are applied to other applications for water rights. The statute does not, however, dictate how the permit is administered. In fact, the DWS is entirely silent as to how permits issued under that statute are administered. Nothing in the language of the DWS prevents domestic well permits from being administered in the same way as all other water rights, including priority administration—exactly what Article XVI, Section 2 of the New Mexico Constitution requires.

**{29}**    Theoretically, the State Engineer could issue a domestic well permit and immediately

11

administer priority to curtail diversion under that permit. While this might seem absurd at first glance, further examination suggests otherwise. In such an instance, a permit—even if temporarily inoperative—would give the applicant a priority date. Should conditions in the particular basin change, curtailment by priority administration could be lifted, and the permit holder could then divert water under that permit with a priority date set at the original date when the permit issued. In this regard, the permit would serve as a placeholder should more water become available in the future. The State Engineer has essentially done this in the Gila basin, issuing permits that do not allow for an actual diversion. Depending on the circumstances, the State Engineer could apply a similar procedure elsewhere to meet a growing shortage of water and imminent threat to senior water users.

{30}　　This discussion reveals the basic flaw in Petitioners' argument. Petitioners are mistakenly equating the issuance of a permit under the DWS with an absolute right to take and use water pursuant to that permit. It would only be in the case of such an absolute water right that the mere issuance of a permit in a fully appropriated basin would necessarily take water from senior users and impair senior water rights. However, the DWS does not create such an unconditional right—at least not on its face.

{31}　　All water rights, including those of Petitioners as well as those created by the DWS, are inherently conditional. *See, e.g.*, *Tri-State*, 2012-NMSC-032, ¶ 45 ("A junior water rights holder cannot complain of deprivation when its water is curtailed to serve others more senior in the system . . . . Such are the demands of our state's system of prior appropriation."). They do not create an absolute right to take water. They are conditioned on the *availability* of water to satisfy that right. Water may not be available for a number of reasons, including drought or the lack of priority due to unsatisfied demand of senior water rights. Accordingly, the DWS, which deals solely with permitting and not administration, cannot facially be in conflict with Article XVI, Section 2 of the New Mexico Constitution.

E.　　**Regulation of Domestic Wells to Protect Senior Water Rights**

{32}　　We now turn to the administrative regulations regarding domestic wells currently in place with the State Engineer. We find these regulations informative as to how the actual use of domestic wells can be administered in such a way as to protect senior water users. Today, domestic well permits are more regulated and integrated into the administrative system than ever before. Regulations allow the State Engineer to effectively deal with some of the practical effects of the issues raised in this case, including ways to mitigate the effects of domestic wells on water shortages.

{33}　　By regulation, the State Engineer has reduced the default maximum allowable diversion from three acre-feet to one acre-foot per year and per well per household. *See* 19.27.5.9(D)(1) NMAC. Presumably, this was done to mitigate the effects that hundreds of domestic wells, considered in the aggregate, could have on a particular basin. Logically, limiting domestic wells in such a way should reduce their impact simply by forcing the well

owners to pump less water.

**{34}**     Regulations also provide for the creation of "Domestic Well Management Areas," discussed previously, which allow the State Engineer greater power to protect senior water users. 19.27.5.14 NMAC. In fact, the stated purpose of Domestic Well Management Areas is "to prevent impairment to valid, existing surface water rights." *Id.* Once a Domestic Well Management Area has been declared, the State Engineer is required to "develop administrative guidelines for each declared domestic well management area" that are "based on the hydrologic conditions of the domestic well management area and the valid, existing water rights located therein." 19.27.5.14(A) NMAC. Thus, for each Domestic Well Management Area, the State Engineer must determine, based on the specifics of that particular basin, how to manage future domestic wells to prevent harm to senior water users.

**{35}**     Significantly, according to the very permits that authorize them, domestic wells are "subject to curtailment by priority administration as implemented by the state engineer or a court." 19.27.5.13(B)(11) NMAC. Curtailment by priority administration authorizes the State Engineer to limit water use administratively in times of water shortage to protect senior water rights. *See* NMSA 1978, § 72-2-9 (1907) (giving the State Engineer authority to supervise the apportionment of water in New Mexico).

**{36}**     Despite these legal provisions for priority administration of domestic wells, Petitioners argue that for practical and political reasons the State Engineer will never really curtail domestic wells. Petitioners rely on the deposition of former State Engineer John D'Antonio, in which he stated that he would not curtail *indoor use* of a domestic well. The district court incorrectly took this deposition testimony to mean that Mr. D'Antonio would *never* curtail domestic wells in any manner. We understand the concern. This Court has previously noted the practical challenges facing the state in curtailing the use of domestic wells. *See Herrington v. State of N.M. ex rel. Office of State Eng'r*, 2006-NMSC-014, ¶ 50, 139 N.M. 368, 133 P.3d 258.

**{37}**     But such speculation about what the State Engineer may or may not do in the future cannot form the basis of a facial challenge in the present. As of 2012, Mr. D'Antonio is no longer the State Engineer, and as such his policy is subject to change at the discretion of his successor. Without specific facts supporting an as-applied challenge, we must assume that domestic wells will be administered as the permits themselves are written: "subject to curtailment by priority administration." 19.27.5.13(B)(11) NMAC. In the absence of a record to the contrary, we must assume that the State Engineer will fulfill the responsibility and exercise the authority bestowed on that office by law. Accordingly, Petitioners' reliance on Mr. D'Antonio's deposition to claim that domestic wells will never be curtailed in any fashion is simply shortsighted. That reliance offers no support for a facial constitutional challenge to the DWS.

**{38}**     In addition to curtailment by priority administration, "[t]he drilling of the well and amount and uses of water permitted are subject to such limitations as may be imposed by the

courts or by lawful municipal and county ordinances which are more restrictive than the conditions of this permit and applicable state engineer regulations." 19.27.5.13(B)(6) NMAC. Therefore, not only are domestic well permits subject to curtailment by the State Engineer, they are explicitly subject to limitations by our courts and by local ordinance, should such a need arise after a proper evidentiary showing.

**{39}** As a practical matter then, domestic well permits, though issued upon application without further inquiry, are subject in their *use* to many of the same conditions and restrictions as are well permits for other uses like agriculture and industry. The State Engineer has designed these conditions to protect senior water users—the very class of users that, according to Petitioners, is threatened by the DWS. We have difficulty envisioning how a water permit that is explicitly subject to curtailment by priority administration in times of shortage, the very essence of prior appropriation and precisely what is required by the language upon which Petitioners rely, can be at the same time be an impermissible exception to that doctrine. Instead of creating an exception to prior appropriation, we view the DWS as merely creating a different, more expeditious permitting procedure for domestic wells.

**{40}** The Legislature codified this simpler permitting process as a policy choice, something that the New Mexico Constitution generally empowers our Legislature to do. *See* N.M. Constitution art. XVI, § 2 ("[U]nappropriated water . . . [is] subject to appropriation for beneficial use, *in accordance with the laws of the state*." (emphasis added)). It was understood by the Framers of the New Mexico Constitution that laws would have to be passed, and in many instances were already passed, to define the particulars of water right permitting and administration in New Mexico. The Framers intended for the Legislature to prescribe precisely how an appropriation would occur, subject to the limit of beneficial use. Nothing in the constitutional language indicates that all appropriations must have the same application procedures. Rather, it appears that the New Mexico Constitution gives the Legislature the power to make such policy choices and create different procedures for different appropriations.

**{41}** The Legislature and the State Engineer have remained attentive since the DWS was first passed in 1953. The Legislature reaffirmed this policy in 2003 when it rewrote and recodified the domestic well exemption. *See* 2003 N.M. Laws ch. 298. Domestic wells were again on the minds of the Legislature in the most recent legislative session. Two bills were passed and signed into law to combat at least some of the potential harmful effects of domestic wells. *See* 2013 N.M. Laws chs. 173, 224.

**{42}** Codified as NMSA 1978, Section 3-20-9.1 (2013), one of the new statutes requires either State Engineer approval of sufficient water or proof of water rights acquired by means *other than a domestic well permit*, before a subdivision plat may be approved if water rights have been severed from the land upon which the subdivision will sit. Presumably, the statute is directed at the practice of "double dipping," whereby a developer buys a farm with water rights, subdivides the farm, then severs and sells the water rights to a third party, while having the new homeowners drill individual domestic wells for each subdivided lot.

**{43}** The other new statute, an amendment to NMSA 1978, Section 47-6-11.2 (2013), requires proof of service from a water provider and approval from the State Engineer, or a right to use water other than by a domestic well, for any subdivision of "ten or more parcels, any one of which is two acres or less," before the subdivision can be approved. This appears to preclude dense clusters of domestic wells, and their possible cumulative effect on senior water rights. Based on these new statutes, we observe that the Legislature appears to be aware of potential problems caused by domestic wells and has taken at least some remedial action short of an outright repeal of the DWS to mitigate its effects.

**{44}** Thus, we cannot conclude that the DWS, a permitting statute, conflicts irreconcilably with Article XVI, Section 2 of the New Mexico Constitution. The Constitution does not require identical permitting procedures for all appropriations. What is required is priority administration for the protection of senior users, a condition to which domestic well permits have been subject for some time. The DWS only deals with how domestic wells are permitted, not how they are administered. Thus, the DWS, at least on its face, does not conflict with Article XVI, Section 2 and survives Petitioners' facial challenge.

**{45}** Though Petitioners' facial challenge proves unpersuasive, we emphasize that senior water users do have other recourse under the law. A water user who is able to show actual or impending impairment can make a priority call against junior users and, if that fails, the water user could then file an as-applied challenge against the DWS. The same protections for senior users apply against domestic wells as against any other junior water right. We understand that showing such an impairment can be a difficult task, but without more than the mere speculation of impairment in the present case, we cannot take the drastic step of declaring a statute unconstitutional that has served this state for sixty years.

**{46}** Accordingly, we hold that the DWS does not on its face violate the New Mexico Constitution, and we affirm the decision of the Court of Appeals to reverse the contrary ruling of the district court. Our Court of Appeals has crafted a thoughtful, scholarly analysis of the constitutional issues before us and the tensions those issues expose regarding competing demands for a precious resource in the arid west. Undoubtedly that tension will continue long after these Opinions issue. We agree with the Court of Appeals that aggrieved citizens must look to the Legislature and the State Engineer for relief from many of these problems, seemingly so intractable. We urge our Legislature to be diligent in the exercise of its constitutional authority over—and responsibility for—the appropriation process. We equally urge the State Engineer to fulfill its superintending responsibility by applying priority administration for the protection of senior water users. Our courts remain available, based upon sufficient evidence, to intervene in appropriate cases to ensure that "priority of appropriation shall give the better right."

**{47}** We do take issue with the Court of Appeals' opinion in certain of its observations regarding the priority doctrine. For example, its conclusion that "[t]he Constitution's priority doctrine establishes a broad priority principle, nothing more" simply goes too far. *See Bounds*, 2011-NMCA-011, ¶ 37. One could read that statement to mean that priority

water rights are nothing more than an aspiration, subject to legislative whim and administrative discretion. Such a reading would be wrong, and it would be a mistake for future litigants to cite the Court of Appeals opinion for any such proposition.

**F.     The DWS Does Not Violate Petitioners' Due Process Rights**

**{48}**     Petitioners also claim that the DWS violates due process of law, both procedurally and substantively. There is some question whether this particular issue was abandoned below. The Court of Appeals considered due process abandoned and said as much in its opinion. *Id.* ¶ 13. The petition for writ of certiorari raised the issue, specifically in one of the questions on which we granted certiorari. Out of an abundance of caution, we will address the due process issue, but only to the extent it was developed in the briefs.

**{49}**     Petitioners argue that "[u]ntil the State/Engineer bring domestic wells under the aegis of the State Engineer's administrative due process protections, the same as all other applications for new groundwater appropriations, their actions are unconstitutional and void."

**{50}**     Similar to the Fourteenth Amendment of the United States Constitution, Article II, Section 18 of the New Mexico Constitution states that "[n]o person shall be deprived of life, liberty or property without due process of law." "Due process involves both substantive and procedural considerations." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 25, 122 N.M. 524, 928 P.2d 250. "Procedural due process requires the government to give notice and an opportunity to be heard before depriving an individual of liberty or property." *Id.* "Substantive due process cases inquire whether a statute or government action shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 30, 137 N.M. 734, 114 P.3d 1050 (internal quotation marks and citations omitted).

**{51}**     We have said numerous times that "[t]he threshold question in evaluating a due process challenge is whether there is a deprivation of liberty or property." *Mills v. N.M. State Bd. of Psychologist Exam'rs*, 1997-NMSC-028, ¶ 15, 123 N.M. 421, 941 P.2d 502; *cf. Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 118 N.M. 470, 477, 882 P.2d 511, 518 (1994) ("Before a procedural due process claim may be asserted, the plaintiff must establish that he was *deprived* of a legitimate liberty or property interest . . . ." (emphasis added)); *Barreras v. N.M. Corr. Dep't*, 114 N.M. 366, 370, 838 P.2d 983, 987 (1992) ("In order to assert a procedural due process claim under the Fourteenth Amendment, a plaintiff must establish *deprivation* of a legitimate liberty or property interest . . . ." (emphasis added)); *Moongate Water Co. v. State*, 120 N.M. 399, 404, 902 P.2d 554, 559 (Ct. App. 1995) (In order to prevail on a substantive due process claim, the plaintiff "must establish that its property interests were *injured* by governmental action that shocks the conscience." (emphasis added)). Presumably, a property interest in an adjudicated water right would be entitled to due process protections, if subjected to deprivation.

16

**{52}** As previously discussed, however, Petitioners have been unable to demonstrate with any specificity how the DWS caused or will cause any deprivation of their water rights. Bounds was unable to show any actual impairment of his water rights before the district court, as he received his full allotment of water. The only potential impairment to Bounds was based on his assertion—with little evidentiary support—that any new appropriations must necessarily cause impairment in a closed and fully appropriated basin. We have already explained the difference between a permit issued pursuant to the DWS, and the subsequent use of that permit subject to priority administration.

**{53}** Bounds did provide an expert who reasoned that because this is a fully appropriated basin, then water for new appropriations, domestic wells included, must come from senior users. This assertion was not based on the expert's own scientific study of the basin but rather the State Engineer's determination that the basin was closed to further *surface* appropriations. The expert did not make any calculations or present any models to quantify the effect of domestic wells on Bounds' water rights. We reject this kind of conclusory statement as a substitute for scientific analysis. What Petitioners suggest is precisely the bright line rule of impairment that this Court has rejected in the past. *See Montgomery*, 2007-NMSC-002, ¶ 24.

**{54}** Without any demonstration of actual impairment or imminent future impairment to Bounds' water rights, or at least something more than a speculative inference from the fact of a closed and fully appropriated basin, the remaining due process analysis is straightforward. Without a proven threat to water rights, there has been no deprivation of property. Without a deprivation of property, there can be no due process violation. Petitioners have not been deprived of anything—at least not on this record—that is subject to either the procedural or substantive protections of the due process clause. As the Washington Supreme Court stated in *Lummi Indian Nation v. State*, "the challengers have cited no case, and we have found none, where mere potential impairment of some hypothetical person's enjoyment of a right has been held to be sufficient for a successful facial due process challenge." 241 P.3d 1220, 1231 (Wash. 2010). Accordingly, we agree that such a facial due process challenge must fail. *See id.* at 1232.

**CONCLUSION**

**{55}** For the above reasons, we hereby affirm the Court of Appeals.

**{56}  IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

17

**PETRA JIMENEZ MAES, Chief Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**

**Topic Index for _Bounds v. State ex rel. D'Antonio_, Nos. 32,713/32,717**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Due Process
New Mexico Constitution, General

**GOVERNMENT**
State Engineer

**NATURAL RESOURCES**
Water Law

**STATUTES**
Constitutionality
Legislative Intent